298 F.2d 192
 ESTATE of Mabel G. CARTER, Deceased, Gilbert Carter, Executor, Estate of Emma M. Vollrath, Deceased, Gilbert Carter, Executor; Gilbert Carter and Virginia Carter; Patricia Carter; Howard Carter; Susan Carter; David C. Carter, and Frances M. Carter, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 16787.
 United States Court of Appeals Eighth Circuit.
 January 18, 1962.
 Rehearing Denied March 19, 1962.
 
 Gilbert Carter, Nevada, Mo., made argument for petitioners and was on the brief.
 Norman H. Wolfe, Atty., Dept. of Justice, Washington, D. C., made argument for the respondent. Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Washington, D. C., were with him on the brief.
 Before SANBORN, MATTHES and RIDGE, Circuit Judges.
 RIDGE, Circuit Judge.
 
 
 1
 This is an appeal from a decision of the Tax Court (35 T.C. 326) sustaining a deficiency assessment made in respect to the several income tax returns filed by petitioners for the years 1955 and 1956.
 
 
 2
 The broad question presented is whether the amounts paid as distributions from a trust estate, which sums arose from the settlement of litigation under the anti-trust laws (15 U.S.C.A. § 15) constituted in the hands of petitioners ordinary income or capital gains. The Tax Court determined they were ordinary income and not a subject for long-term capital gains treatment under Section 1231, I.R.C.1954 (26 U.S.C.A. § 1231) as claimed by all the petitioners. That Court also ruled, as to those taxpayers who inherited beneficial interests in the trust, that they were not entitled to deduct from gross income the adjusted basis of inherited interests as claimed under Section 1014, I.R.C.1954 (26 U.S. C.A. § 1014).
 
 
 3
 From our examination of the record on appeal, which includes portions of the record made in the anti-trust litigation above mentioned, it appears that the facts as found by the Tax Court are entirely accurate and fair. Consequently, no useful purpose would be served by making any detailed statement of facts in this opinion. It is deemed sufficient to say that the theory of the claim asserted in that anti-trust litigation was apposite to that made "for loss of profits" which was sustained by this Court in similar anti-trust litigation. Cf. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 194 F.2d 846 (8 Cir. 1952) cert. den. 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348. Further, it is apparent from the record made in the anti-trust litigation here to be considered that the claim for damages therein was singularly premised in the proposition: What would have been earned by way of profits by Mabel K. Carter during the time she would have, in all likelihood, operated the Liberty Theatre in Sedalia, Missouri, as a first-run motion picture house, from and after November 7, 1940 to sometime prior to her death on May 18, 1954, if that business had been freed from the impact of any anti-trust violation as charged.[1]
 
 
 4
 The gist of the Tax Court's opinion in this case is premised on a finding of fact and conclusion therefrom that "loss of anticipated profits" inherent in that concept, was the nature and character of the claim for damages, settlement for which was made in that litigation. Such issue presented a question of fact for determination by the Tax Court. Cf. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1959); Phoenix Coal Co. v. Commissioner, 231 F.2d 420 (2 Cir. 1956).
 
 
 5
 It is well-settled law that the classification for tax purposes of amounts received in settlement of litigation is to be determined by the nature and basis of action settled. United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500 (1935); Raytheon Production Corp. v. Commissioner, 144 F.2d 110 (1 Cir. 1944), cert. den. 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622; Freeman v. Commissioner, 33 T.C. 323 (1959); Cullins v. Commissioner, 24 T.C. 322 (1955). If it is found that such a settlement is one in respect to a claim for lost profits or partly for lost profits and partly in lieu of punitive damages such as are recoverable in anti-trust litigation, there can be no question as to their taxability as ordinary income. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955); Phoenix Coal Co. v. Commissioner, supra; Mathey v. Commissioner, 177 F.2d 259 (1 Cir. 1949); Cullins v. Commissioner, supra. These taxpayers had the burden of proving facts essential to bring themselves within the sections of the statutes providing for capital gains treatment as claimed. Hord v. Commissioner, 143 F.2d 73 (6 Cir.); Kessler v. United States, 124 F.2d 152, 154 (3 Cir.). They also had the burden of proving what portion, if any, of the amount received in settlement of the litigation in question constituted non-taxable income. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Phoenix Coal Co. v. Commissioner, supra. This, they did not do. A mere allegation of damages to "good will" does not meet that burden.
 
 
 6
 "Neither the complaint, nor the settlement agreements, nor the releases, nor the evidence as a whole, provide a basis for making any allocation of the recovery and finding that all or part of the sum" paid in settlement of the litigation here considered "represented a return of capital." Cullins v. Commissioner, supra, 24 T.C. l. c. 328.
 
 
 7
 The contention made by petitioners that the Liberty Theatre as located in Sedalia, Missouri, had substantial good will at the time Mabel K. Carter commenced business therein; that she legally appropriated that good will to her business operations and the existence of that fact appearing in the record shows that a portion of the settlement was in part for "loss of good will," is factually without basis. It ignores the fact appearing in the anti-trust litigation that the plaintiffs therein contended that such location was leased to Fox Theatres Corporation as a consequence of the impact of the anti-trust conspiracy charge.[2] The potency of that contention in relation to the claim of damages for "loss of profits" was that Mabel K. Carter, being the owner of the building in which the Liberty Theatre was located, would, more likely than not, have continued in the theatre business at that location until her death if she had been permitted to have access to first-run motion pictures and secure such profits for herself, but that the impact of the anti-trust violation charged prevented her from making "use" of that property in her theatre business operation.[3] Such contention was within the ambit of the pleadings filed in the anti-trust litigation. At no place in the record thereof was any proffered proof made as to the "going concern value" or "good will" value, qua good will of the Liberty Theatre business. No evidence was adduced before the Tax Court as to those matters. A priori it is perceived that if that "Old Place", as petitioners denote it, had any such good will value as asserted by them, that value inhered to the theatre property and it was appropriated by Fox Theatres Corporation when that Corporation took over and thereafter operated a first-run motion picture theatre therein. The profits "Fox" made from that operation over a period of ten years were one facet of proof relied on by plaintiff in the anti-trust litigation to establish the quantum of loss of Mrs. Carter's anticipated profits. Petitioners' contention that such proof was proffered as to the value of "destruction" and "loss of good will" sustained by Mabel K. Carter, is not supported by the record made in the anti-trust litigation.
 
 
 8
 Any damages recoverable in the anti-trust litigation in light of the foregoing, were correctly determined by the Tax Court as being in relation to a "loss of profits" for interrupted "use" of property and not the destruction of a capital asset. Cf. Commissioner of Internal Revenue v. Gillette Motor Transport, Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed. 2d 1617 (1959); Midwest Motor Express, Inc. v. Commissioner, 251 F.2d 405 (8 Cir.) cert. den. 358 U.S. 875, 79 S.Ct. 116, 3 L.Ed.2d 105. Further, it is clear from the record made in the anti-trust litigation, that the contention of damage for loss of "good will" as now asserted by petitioners was contrary to the theory of claim for "loss of profits" actually asserted in that litigation.
 
 
 9
 It is not helpful in a case such as this to merely editorialize on what constitutes "destruction" of a business venture, "capital assets" or "good will" and argue therefrom by analogy and inferences drawn from factual situations considered in other litigation, as these petitioners do. Consequently, we shall not follow them in all parts of their argument made in this appeal. As the Tax Court aptly said in Goldsmith v. Commissioner, 22 T.C. 1137, 1144 (1954):
 
 
 10
 "The essential character of the payment is not to be determined by a mere description or designation, — the actualities of the situation must govern our decision as to the true nature of the amount received."
 
 
 11
 The essential character of the payment received in settlement of the anti-trust litigation here was factually determined by the Tax Court to be ordinary income.
 
 
 12
 "Fact findings of the Tax Court under 1954 Internal Revenue Code § 7482(a), 26 U.S.C.A. § 7482(a), are to be given the same weight as findings of a district court in a case tried without a jury. The Tax Court's findings of fact must stand unless clearly erroneous. This rule also applies to factual inferences from undisputed basic facts." Miller v. C. I. R., 295 F.2d 538, 541 (8 Cir. 1961).
 
 
 13
 In Commissioner of Internal Revenue v. Duberstein, supra, 363 U.S. l. c. 289, 80 S.Ct. l. c. 1198, the Supreme Court said:
 
 
 14
 "Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact."
 
 
 15
 Therefore, this Court will not substitute its judgment for that of a Tax Court, even in a case where the facts may be stipulated or undisputed. In Boehm v. Commissioner, 326 U.S. 287, 293, 66 S. Ct. 120, 124, 90 L.Ed. 78, it was ruled that: "The circumstance that the facts in a particular case may be stipulated or undisputed does not make (the) issue any less factual in nature. The Tax Court is entitled to draw whatever inferences and conclusions it deems reasonable from such facts. And an appellate court is limited, under familiar doctrines, to a consideration of whether the decision of the Tax Court is `in accordance with law.' 26 U.S.C. § 1141(c) (1), 26 U.S.C.A. Int.Rev.Code § 1141(c) (1). If it is in accordance, it is immaterial that different inferences and conclusions may fairly be drawn from the undisputed facts. Commissioner [of Internal Revenue] v. Scottish American [Investment] Co., 323 U.S. 119 [65 S.Ct. 169, 89 L.Ed. 113]." See also Crown Iron Works Co. v. C. I. R., 245 F.2d 357, l. c. 360, 8 Cir. 1957.
 
 
 16
 We can find nothing arbitrary or excessive in the Commissioner's assessment of a deficiency against these taxpayers under the facts in this case, nor are we convinced of any error, factual or legal, in the decision as reached by the Tax Court that would warrant a reversal of its decision. Since the amount received under the settlement agreement in question was factually determined by that Court to be ordinary income, there could be no involuntary conversion of a capital asset in this case within Section 1231, I.R.C.1954.
 
 
 17
 Nor is there any ground for claiming a deduct basis for any part of such recovery under Section 1014, I.R.C. 1954 (26 U.S.C.A. § 1014) as made by those taxpayers who inherited interests in the Mabel K. Carter Trust. Section 1014(c), supra, provides: "This section shall not apply to property which constitutes a right to receive an item of income in respect to a decedent under section 691," (26 U.S.C.A. § 1014(c)). Petitioners admit that Section 1014, supra, does not apply to property which constitutes a right to receive items of income in respect to a decedent under Section 691(a), but asserts that the section is inapplicable here because: (1) "constitute" means to compose, not "subsequently develop into", and (2) at the death of taxpayers' decedents there was no "item of income" because I.R.C. Regulation 1.691(a) (1) (b) defines income in respect to a decedent as "amounts to which decedent was entitled as gross income"; hence they say the interest of their decedent "could not be deemed gross income" as that interest was only an unliquidated anti-trust claim. Contrary to such contention, Treasury Regulation Sec. 1.691(a) (1) (b) (3) provides that the term "income in respect of a decedent" includes "income to which decedent has a contingent claim at the time of his death." Under Rev.Rule 55-463:
 
 
 18
 "Income realized by the estate of a deceased person resulting from a claim which was in process of litigation at the date of his death constitutes income acquired by reason of the death of the decedent and, under the provisions of Section 691 of the Internal Revenue Code of 1954, is includible in its gross income in the taxable year when received."
 
 
 19
 The Section 1014 claim of deduct basis here made had this factual premise. On October 21, 1952, when the trust in question was established, the beneficiaries thereof acquired an interest in a contested unliquidated claim as to which Mabel K. Carter asserted profits would have accrued to her but for certain conduct in violation of the anti-trust laws of the United States. That claim was wholly as to the loss of anticipated profits. Such a claim was not shown to have been made in respect to any "capital" attributable to any business conducted by Mabel K. Carter. It, therefore, was not "capital" on the date the trust was established nor on the date of Mabel K. Carter's death. A claim so manifestly contingent and indefinite as to lack any quality of "capital" cannot have that quality before the time it came into existence. It did not come into existence until it was received in respect to a settlement of litigation to which these taxpayers' decedents prior thereto only "had a contingent claim at the time of (their) death." Under Section 691, I.R.C.1954 and Treasury Regulation of Income Taxes (1954 Code) Section 1.691, such proceeds were required to be considered in the hands of the person ultimately receiving them, in the same "character which (they) would have had in the hands of the decedent if the decedent had lived and received such amount[s]." Section 691(a) (3), I.R.C.1954 (26 U.S. C.A. § 691(a) (3)). Cf. O'Daniel's Estate v. Commissioner, 173 F.2d 966 (2 Cir. 1949); Ullman v. Commissioner, 34 T.C. 1107 (1960).
 
 
 20
 The decision of the Tax Court in this case is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Exhibit "S", transcript of pre-trial conference of February 7, 1955, referred to in Tax Court opinion; the last of several such conferences held in that litigation before commencement of the trial where the issues were congealed
 
 
 [2]
 Cf. Carter v. Twentieth Century-Fox Film Corp., 127 F.Supp. 675 (D.C.W.D. Mo.) as to one aspect of such leasing and claim for damages premised thereon
 
 
 [3]
 At the pre-trial conference mentioned in footnote 1, supra, the sum and substance of the claim of right to recover loss of anticipated profits in the anti-trust litigation was stated by counsel for the plaintiff therein thus: "There will be evidence in this case that the plaintiff, Mrs. Carter, was an energetic, enterprising woman, and that when she was driven out of this business she went into another business, and continued in that business to the date of her death. — Now, that is a fact which the jury is entitled to know as to whether or not she would have continued in business until she died," she "had the health and the strength and the desire, why wouldn't she have continued in this business which would have been ten times more lucrative than the small pittance that she got out of her work at the amusement park? She worked right up to the time of her death." Pp. 246, 247