J. Kenneth **ALEXANDER** and Joanne M. Alexander, Petitioners–Appellants,

v.

**INTERNAL REVENUE SERVICE of the United States of America,** Respondent–Appellee.

No. 95–1451.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1995.

Decided Dec. 22, 1995.

Philip J. Ryan, with whom Ryan, Martin, Costello, Leiter, Steiger & Cass, P.C., Springfield, MA, was on brief for appellants.

William J. Patton, Tax Division, Department of Justice, Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, and Richard Farber, Tax Division, Department of Justice, were on brief for appellee.

Before TORRUELLA, Chief Judge, ALDRICH and COFFIN, Senior Circuit Judges.

TORRUELLA, Chief Judge.

Respondent–Appellee, the Commissioner of Internal Revenue (the "Commissioner"), determined a deficiency of $57,441 in the 1989 Federal income tax filed by J. Kenneth Alexander (the "Taxpayer") and Joanne M. Alexander (together, the "Appellants" or the "Petitioners"). The Tax Court upheld the Commissioner's determination and the Petitioners now seek review of that decision. For the reasons stated below, we affirm.

## I. BACKGROUND

The pertinent facts, some of which have been stipulated and incorporated in the district court's findings, are not in dispute, and are recapitulated here. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1989. Internal Revenue Code, 26 U.S.C. § 1 *et seq.* (1988 & Supp.1991).

In 1983, Taxpayer entered into an employment agreement with his employer, W.F. Young, Inc. ("Young"), according to which Taxpayer would remain in the capacities of Executive Vice President, Treasurer, and Chief Executive Officer until he reached the age of seventy (70), on December 13, 1993. On October 15, 1987, when Taxpayer was sixty-four (64) years old, Young terminated Taxpayer's employment. Subsequent to his termination, Taxpayer offered management consulting services for a fee, and in 1989 obtained a management consulting contract with the Hanson Group of Ludlow, Massachusetts.

On February 10, 1988, Taxpayer filed a civil lawsuit against Young (the "lawsuit"), in which Taxpayer was represented by the law firm of Ryan & White, P.C. ("Ryan & White").[1] In his complaint, Taxpayer alleged a breach of the express 1983 employment contract (or "Count I"), a breach of an implied pension benefits contract (or "Count II"), and age discrimination under Massachusetts General Law, Chapter 151B, Section 1 (1976) (or "Count III").

On May 1, 1989, Taxpayer and Young executed a written settlement agreement (the "Settlement Agreement"), according to which Young was to pay Taxpayer $350,000, of which $100,000 was allocated to Count III, and $250,000 to Counts I and II.[2] On May 5, 1989, as per the Settlement Agreement, Young issued two checks payable to "J. Kenneth Alexander and Ryan & White, Attorneys for J. Kenneth Alexander," one in the amount of $100,000 (for Count III), and the other in the amount of $225,395.20 (for Counts I and II, less taxes withheld).

On the 1989 Federal income tax return, Taxpayer's tax preparer deducted $245,100 from the settlement proceeds attributable to Counts I and II. This deduction was explained in an attached statement, which stated that Taxpayer paid Ryan & White $258,000 in legal fees (the "Legal Fee").[3] It also stated that according to Ryan & White's time allocations, 5% of the Legal Fee was attributable to settlement of Count III, and 95% to settlement of Counts I and II. Accordingly, $245,100 (95% of the $258,000 Legal Fee) was deducted from the settlement proceeds attributable to Counts I and II.

The Commissioner sent a notice of deficiency disallowing Taxpayer's direct deduction of the Legal Fee from the settlement proceeds. The Commissioner determined that the $250,000 received from Young in settlement of Counts I and II was gross income to Taxpayer, and that the Legal Fee associated with Counts I and II were miscellaneous itemized deductions. Accordingly, the Commissioner reduced the $245,100 deduction reported on the 1989 return to $240,198, due to the increase in Taxpayer's adjusted gross income and the two percent (2-percent) adjusted gross income limitation for miscellaneous deductions. In addition, the Commissioner determined that, due to these adjustments, Taxpayer was liable for the Alternative Minimum Tax ("AMT") under Section 55 of the Code, which resulted in a deficiency of $57,441.

Petitioners filed a petition in the United States Tax Court for redetermination of the deficiency. The Tax Court rejected Petition-

---

**1.** *J. Kenneth Alexander v. W.F. Young, Inc.*, Civil Action No. 82–243 (Mass.Superior Court, Hampden County 1988).

**2.** The Settlement Agreement also provided that (i) Taxpayer would be deemed to have retired from Young effective October 15, 1987; (ii) Taxpayer would receive monthly payments commencing on May 15, 1989, and continuing for the duration of Taxpayer's life, which total over $70,000 per year; and (iii) Taxpayer and Young

executed releases, according to which Alexander surrendered all claims arising out of his employment and its termination.

**3.** The additional information included in the statement attached to Petitioners' 1989 return, entitled "Disclosure Under Reg.Sec. 1.6661," is not included here because it is not essential for the disposition of the issue on appeal.

ers' arguments, entering a final judgment on January 31, 1995, upholding the Commissioner's determination of Petitioners' tax deficiency. This appeal followed. We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1).

## II. DISCUSSION

The only issue on appeal is the proper tax treatment of the Legal Fee. We must determine whether the Petitioners properly deducted the Legal Fee from the settlement proceeds under Section 1001. If we find that they did not, then we must determine whether to treat the Legal Fee as an "above the line"[4] trade or business deduction under Section 162 of the Code, or as a miscellaneous itemized deduction "below the line."[5]

On appeal, Petitioners essentially contend that the Tax Court's decision to uphold the Commissioner's deficiency finding is caused by the erroneous determination that Taxpayer was in the trade or business of "the performance of services as an employee during 1989." Petitioners correctly assert that the defining issue is whether Taxpayer was Young's "employee" for purposes of classifying the settlement proceeds and for determining the deductibility of the Legal Fee under Section 62(a)(1). Although we agree with Petitioners' formulation of the defining issue, we reject their arguments and affirm the court below.

### A. Standard of Review

■ We review the Tax Court's decision "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a). The treatment of the Legal Fee is purely a question of law and, therefore, subject to *de novo* review. *Estate of Robertson v. Commissioner*, 15 F.3d 779, 781 (8th Cir.1994); *see also First National Bank in Albuquerque v. C.I.R.*, 921 F.2d 1081, 1086 (10th Cir.1990) (stating that *de novo* review is applied to tax court's findings of law and of ultimate fact derived from applying legal principles to subsidiary facts). The Tax Court's findings of fact will only be disturbed for clear error. *Manzoli v. Commissioner*, 904 F.2d 101, 103 (1st Cir.1990); *Thomson v. Commissioner*, 406 F.2d 1006, 1010 (9th Cir. 1969); *see also Connor v. Commissioner*, 847 F.2d 985 (1st Cir.1988) (emphasizing appropriateness of giving weight to Commissioner's well-established views).

### B. Characterization of the Legal Fee

Petitioners argue that the Legal Fee was properly subtracted from the amount realized in the settlement, as per Sections 1001 and 1016,[6] in order to determine the "gain" from the disposition of Taxpayer's "valuable intangible assets," the express and implied contracts and resulting lawsuit. In support of their position, Petitioners contend that the Legal Fee was the "cost of the disposition" of Taxpayer's assets because it was incurred *after* Taxpayer's employment was terminated for the "sole purpose" of enhancing their value and disposing of them by obtaining either a settlement or judgment. Petitioners further contend that, because Sections 1001 and 1016 make no distinction between the

---

**4.** We make reference to the "line" on the federal income tax form where adjusted gross income is calculated.

**5.** Petitioners do not dispute that by treating the Legal Fee "below the line" the amounts involved trigger the AMT and, thus, their tax deficiency. We recognize that it is this ramification which drives Petitioners' challenge to the Commissioner's determination that the Legal Fee is to be treated as a miscellaneous itemized deduction.

**6.** Section 1001(a) provides, in relevant part,
   The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in [S]ection 1011 for determining gain....

Section 1011(a) provides, in relevant part,
   The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under [S]ection 1012 ...) adjusted as provided in [S]ection 1016.

Section 1012 provides, in relevant part,
   The basis of property shall be the cost of such property....

Section 1016 provides, in relevant part,
   (a) General rule. Proper adjustment in respect of the property shall in all cases be made (1) for expenditures, receipts, losses, or other items, properly chargeable to capital account....

26 U.S.C. §§ 1001(a), 1011(a), 1012, 1016 (1988 & Supp.1991).

basis and gain rules for capital or ordinary assets, "there is a 'capital account' for all assets, whether those assets are considered capital or ordinary." Thus, Petitioners conclude, the Legal Fee is an "expenditure ... properly charged to [the assets'] capital account" within the meaning of Section 1016 to be offset against the settlement proceeds in order to determine the "gain" under Section 1001.

. Upon *de novo* review, we reject Petitioners' arguments invoking treatment under Section 1001, and their contention that the Tax Court erred when it rejected them.

■ In determining the tax treatment of the Legal Fee, we take as our point of departure Section 61(a), which defines gross income as "all income from whatever source derived," subject to certain exclusions provided in the Code. It includes, and is not limited to, "[c]ompensation for services, including fees, commissions, fringe benefits, and similar items." *See Helvering v. Clifford,* 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940) (finding that Congress intended to exert the "full measure of its taxing power" through Section 61(a)). Next, we take into consideration the well-settled rule that the classification of amounts received in settlement of litigation is to be determined by the nature and basis of the action settled, and amounts received in compromise of a claim must be considered as having the same nature as the right compromised. *Parker v. United States,* 573 F.2d 42, 49, 215 Ct.Cl. 773 (1978) (quoting *Carter's Estate v. Commissioner,* 298 F.2d 192, 194 (8th Cir.1962)), *cert. denied,* 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978); *see Furrer v. Commissioner,* 566 F.2d 1115, 1116 (9th Cir.1977), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1132 (1978); *Clark v. Commissioner,* 67 T.C.M. (CCH) 3105, 1994 WL 263688 (1994).

■ These two considerations lead us to our test: it "is not whether the action was one in tort or contract but rather the question to be asked is 'In lieu of what were the damages awarded?'" *Raytheon Production Corp. v. Commissioner,* 144 F.2d 110, 113 (1st Cir.) (citation omitted), *cert. denied,* 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622 (1944);

*see Getty v. Commissioner,* 913 F.2d 1486, 1490 (9th Cir.1990) (applying *Raytheon* test in characterizing settlement payment for tax purposes). An amount received in lieu of compensation under an employment contract constitutes gross income to the recipient in the year in which it was received. *See Furrer v. Commissioner,* 566 F.2d at 1117 (holding lump sum payment for termination of an agency relationship is ordinary income); *Heyn v. Commissioner,* 39 T.C. 719, 720, 1963 WL 1456 (1963) (holding amount received in consideration of an employment contract is ordinary income); *Clark v. Commissioner,* 67 T.C.M. (CCH) at 3105–7 (finding that lump sum payment received upon termination of employment contract is ordinary income); Rev.Rul. 58–301, 1958–1 C.B. 23, 24 (holding lump sum payment received by an employee as consideration for the cancellation of his employment contract constitutes gross income to the recipient in the taxable year of receipt); *cf.* Rev.Rul. 80–364, 1980–2 C.B. 294 (illustrating by way of three hypothetical examples the income and employment tax consequences of interest and attorney's fees awarded in connection with claims for back wages).

■ Under this rubric, whether Taxpayer's employment contracts are "property" or "intangible assets" in the abstract is irrelevant to the proper analysis of the characterization of the settlement proceeds and, thus, the proper tax treatment of the Legal Fee. The Supreme Court's decision in *Hort v. Commissioner,* 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941), is particularly instructive:

Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22(a) [of the 1932 Act] expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating right to such payments may be treated as "property" or "capital."

*Id.* at 31, 61 S.Ct. at 758. The cancellation of the lease in *Hort* "involved nothing more than the relinquishment of the right to future rental payments in return for a present substitute payment and possession of the leased

premises." *Id.* at 32, 61 S.Ct. at 759. Because those future rents would have been taxed as ordinary income had they been received in the ordinary course of the lease, the "substitute" payment should be treated no differently. *Id.* Similarly, here, assuming the settlement was a "cancellation" of Taxpayer's contractual rights, what Taxpayer fought for, and received, is merely a substitute payment for the compensation and retirement benefits due him under his express and implied employment contracts. Because his salary and benefits would have been taxed as ordinary income without any offsetting basis if received in the ordinary course under Taxpayer's employment contract, the "substitute" payments can be treated no differently. *See Henry v. Commissioner*, 62 T.C. 605, 606, 1974 WL 2657 (1974) (holding that amounts received in settlement of breach of employment contract must be held impressed with the same compensatory, taxable character); *cf. Hodge v. Commissioner*, 64 T.C. 616, 1975 WL 3048 (1975) (addressing suit for back wages); *Stearns v. Commissioner*, 14 T.C. 420, 1950 WL 321 (1950), *affd.*

*per curiam* 189 F.2d 259 (6th Cir.1951) (same).[7]

Similarly, Petitioners' argument that, because the settlement was a "cancellation" of his contractual rights, it was a "disposition" within the meaning of Section 1001(a), is unpersuasive. As the Tax Court correctly noted, assuming the settlement was a "cancellation" of Taxpayer's rights, it does not necessarily follow that the settlement constituted a "disposition" of "property" warranting an offsetting of basis. *See Herbert's Estate v. Commissioner*, 139 F.2d 756 (3d Cir.1943) (discussing meaning of "disposition" and holding extinguishment of decedent's debt, represented by readily transferable notes and open accounts, was a disposition), *cert. denied*, 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582 (1944).[8] More importantly, to permit Taxpayer to offset his "cost of disposition" or basis—the Legal Fee—would be fundamentally inapposite in light of the controlling fact that the settlement proceeds are clearly in the nature of compensation as Young's employee.[9]

7. In support of their claim that Taxpayer's express and implied contracts were "intangible assets," Petitioners rely on a Fifth Circuit case and two revenue rulings holding that professional football or baseball player contracts were assets with distinct values that could be depreciated by the team owners. *Laird v. U.S.*, 556 F.2d 1224 (5th Cir.1977) (discussing professional football player contracts), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978); Rev.Rul. 77–137, 1971–C.B. 104 (same); and Rev.Rul. 67–379, 1967–2 C.B. 127 (same, baseball). Petitioners' reliance is clearly inapposite and unpersuasive. As the Tax Court noted, and as Petitioners concede, Taxpayer's employment contract with Young was neither a depreciable nor a capital asset in his hands.

   Moreover, while Petitioners correctly maintain that Taxpayer's contract claims were ordinary, not capital, assets, *Furrer v. Commissioner*, 566 F.2d at 1117 (noting that "[i]f all contracts granting rights could be considered capital assets, without inquiry into the nature of the rights granted, almost all ordinary income from salaries, wages, or commissions could be transformed into capital gain"), they nonetheless urge us to apply here the rationale adopted in a line of cases addressing the deductibility of legal fees incurred in the disposition of a capital asset. *See United States v. Hilton Hotels Corp.*, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970); *Woodward v. Commissioner*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); *Helgerson v. United States*, 426 F.2d 1293 (8th Cir.1970); *Bai-*

*er v. Commissioner*, 63 T.C. 513, 1975 WL 3056 (1975), *affd*, 533 F.2d 117 (3d Cir.1976); *see also A.E. Staley Manufacturing Co. and Subsidiaries v. Commissioner of Internal Revenue*, 1995 WL 535269 at *46–48, 105 T.C. (CCH) 14 (1995) (providing a recent discussion of the "origin of the claim" analysis in the context of capital assets). These cases simply do not persuade us that Taxpayer's Legal Fee should be offset against the settlement proceeds because, as we have already explained, Taxpayer's Legal Fee was incurred to obtain damages in the nature of compensation due him under the express and implied employment contracts.

8. As the Tax Court correctly noted, Petitioners' reliance on *Herbert's Estate* is inapposite. Petitioners fail to recognize that the nature of the claim involved proved an important factor in the court's finding of a "disposition." Unlike the executors in *Herbert's Estate*, Taxpayer did not hold a claim against Young in the sense of a "debt," that was readily transferable or liquidated prior to settlement; nor, was he in any way Young's "creditor."

9. One might intuitively argue that some sort of "basis" should be recognized when one has to litigate to receive one's due compensation. The fact remains, however, that the Code simply does not provide for the offsetting of basis in such circumstances except in limited cases involving capital assets. Instead, the Code permits litigation expenses to be taken into account by way of a deduction. *See* Section C, *infra.*

To recapitulate, what is relevant is that, as the Tax Court found, Taxpayer in substance was suing for damages suffered by the loss of his employment with Young—his loss of compensation in terms of salary and retirement benefits. This is a factual determination and, indeed, is one with respect to which we find no clear error. In fact, the claim giving rise to the Legal Fee is inexorably rooted in Taxpayer's employment with Young—indeed, in his status as Young's "employee."[10] Because the damages Taxpayer received are essentially a substitute for the salary and benefits he would have received under the employment contract, they are fully included as ordinary income in Taxpayer's gross income under Section 61, without regard to whether Taxpayer's employment contracts constituted "property" or "intangible assets." *Hort*, 313 U.S. at 31–32, 61 S.Ct. at 758–59.[11]

Thus, upon *de novo* review, we find no error of law in the Tax Court's rejection of Petitioners' arguments in favor of Section 1001 treatment, because the settlement proceeds were received in lieu of compensation and, as such, are fully included as gross income under Section 61.

## C.  Deductibility of the Legal Fee

■ Having determined that the Legal Fee is included in gross income under Section 61, we turn to the question of its deductibility. It is well-settled that any accessions to wealth received by a taxpayer are included in his gross income, unless the taxpayer can demonstrate that the amount received falls within a specific statutory exclusion. *Commissioner v. Glenshaw Glass*, 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 *reh'g denied*, 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 (1955). Section 162(a) provides that there "shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 62(a)(1) adds that expenses falling within Section 162(a) are deducted from gross income to arrive at "adjusted gross income," explicitly *excluding* expenses incurred by a taxpayer engaged in the trade or business of the performance of services as an employee.[12]

Petitioners argue that, if the entire settlement proceeds allocable to Counts I and II constitute gross income to him under Section 61(a) of the Code, the Legal Fee should be treated as an "above the line" trade or business expense under Section 162(a) of the Code, rather than a "miscellaneous itemized deduction" under Section 63, as the Commissioner found and the Tax Court held. The crux of Petitioners' argument is that the "employee" limitations of Section 62(a)(1) do not apply, because Taxpayer was not Young's employee during 1989. Pointing to the fact that Taxpayer was employed in 1989 as an independent management consultant, they maintain that the Tax Court's application of Section 62(a)(1) is based on its erroneous finding that Taxpayer was "in the business of performing services of an employee" during 1989.

■ We disagree with Petitioners. First, we reiterate that we find no clear error in

10. We note also that under this rubric it is irrelevant that at the time of the lawsuit, Taxpayer was no longer on Young's payroll. *See* footnote 14, *supra*, and related text. Equally irrelevant is Taxpayer's stated purpose for incurring the Legal Fee, namely "to add value to [Taxpayer's] contract claims, and to dispose of those assets by means of either a settlement or a courtroom victory." *See Woodward*, 397 U.S. at 578, 90 S.Ct. at 1306 (rejecting purpose test and noting that it would encourage a resort to formalisms and artificial distinctions); *U.S. v. Gilmore*, 372 U.S. 39, 49, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963) (rejecting purpose test in favor of origin of claim test). Taxpayer's desire to obtain the salary and benefits due under the employment contracts was clearly the "origin" of the lawsuit—not his alleged desire to "dispose" of "intangible assets."

11. We note that we need not address the merits of Petitioners' claim regarding Sections 1001 and 1016, namely that because those two sections make no distinction between the basis and gain rules for capital or ordinary assets, "there is a 'capital account' for all assets."

12. Section 62(a)(1) provides in pertinent part,

> The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, *if such trade or business does not consist of the performance of services by the taxpayer as an employee.*

26 U.S.C. Section 62(a)(1) (1988 & Supp.1991) (emphasis added).

the Tax Court's determination finding that Taxpayer was "in the business of performing services of an employee" during 1989.[13] Second, we look to the plain language of Section 62(a)(1). As the Tax Court correctly noted, no distinction is made in Section 62(a)(1) between present and former employees if the expenses originated in the trade or business of being an employee.[14] Thus, the fact that Taxpayer was not in actuality Young's employee in 1989 does not alter the controlling fact that the lawsuit and the ensuing settlement directly resulted from his employment with Young. Petitioners argue in vain that Taxpayer should not be "saddled with employee status" because his new trade or business as an independent management consultant indicates a "break" from his former employment with Young (Appellants' Brief, p. 40). Equally in vain, they argue that the "[l]awsuit should be looked at as the ordinary and necessary expense incurred by an independent businessman to bring suit when contracts are breached." (Appellants' Brief, p.

40). As the Tax Court correctly found, there is absolutely no connection between Taxpayer's lawsuit and his independent management consulting business. Instead, Taxpayer's lawsuit was "directly connected with, or ... proximately resulted from" his employment at Young.[15] *Kornhauser,* 276 U.S. at 153, 48 S.Ct. at 220. It is under this rubric that Taxpayer is considered to be in the business of being Young's "employee" for purposes of falling within the Section 62(a)(1) limitation.[16]

In another attempt to circumvent the application of Section 62(a)(1), Petitioners argue that, if we attribute employee status to Taxpayer, we should find that Young's direct payment of the settlement proceeds to R & W (by way of joint checks payable to Taxpayer and R & W as joint payees) qualifies as a reimbursement arrangement within the meaning of Section 62(a)(2)(A). That section provides that reimbursed employee expenses are permitted to be deducted from gross income when arriving at adjusted gross income.[17] Petitioners contend that Young's di-

---

13. It is well-settled that an individual may engage in the trade or business of rendering services as an employee. *McKay v. Commissioner,* 102 T.C. 465, 489, 1994 WL 97734 (1994), *appeal docketed,* No. 94-41189 (5th Cir.1995) (collecting cases).

14. *See McKay,* 102 T.C. at 489 (holding corporate executive's post-employment litigation expenses incurred in suit against former employer were incurred in trade or business, and were deductible, if at all, under Section 162); *McKeague v. United States,* 12 Cl.Ct. 671, 674–77 (1987) (finding, *inter alia,* that former employee's litigation expenses which originated in trade or business were deductible as ordinary expenses under Section 162), *aff'd without published opinion,* 852 F.2d 1294 (Fed.Cir.1988); *cf. Kornhauser v. United States,* 276 U.S. 145, 153, 48 S.Ct. 219, 220, 72 L.Ed. 505 (1928) (stating that where suit against a taxpayer is directly connected with, or proximately resulted from, his business, expense incurred is a business expense).

15. We note also that on the "Disclosure Under Reg.Sec. 1.6661," Petitioners' tax preparer describes the lawsuit against Young as being for "age discrimination, back wages and retirement benefits." (Appellants' Appendix, p. 68). We also note that the releases executed pursuant to the Settlement Agreement regard "[a]ll claims arising out of [Taxpayer's] employment by [Young] and the cessation of [Taxpayer's] employment" and "[a]ll claims which were or could have been asserted by [Taxpayer] in the Lawsuit entitled *J. Kenneth Alexander v. W.F. Young, Inc.,*

Hampden Superior Court Civil Action No. 88–243." (Appellants' Appendix, p. 98).

16. Similarly irrelevant is Petitioners' argument that the Legal Fee was not expended for the benefit of Young's business and was in fact detrimental to Young. *See McKay,* 102 T.C. at 488, n. 23 (noting that "[i]t makes no difference whether the employee is defending himself in actions that challenge his activities as a corporate officer or the employee is bringing a suit against his former employer."); *see also McKeague,* 12 Cl.Ct. 671 (involving litigation expenses which were not incurred for benefit of taxpayer's employer).

17. Section 62(a)(2)(A) provides, in pertinent part, that in determining adjusted gross income there will be allowed,

[t]he deductions allowed by part VI (section 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, *under a reimbursement or other expense allowance arrangement with his employer.* The fact that the reimbursement may be provided by a third party shall not be determinative of whether or not the preceding sentence applies.

26 U.S.C. § 62 (1988 & Supp.1991) (emphasis added); *see* H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. at 204. U.S.Code Cong. & Admin.News 1988, pp. 2776, 2992. (allowing reimbursed expenses only if incurred pursuant to a reimbursement or other expense allowance arrangement

rect payment arrangement was effectively providing for the payment of the Legal Fee pursuant to Section 62(a)(2)(A) in light of the fact that R & W had a statutory lien under Massachusetts law for the payment of the Legal Fee. *See* Mass.Gen.L. ch. 221, sec. 50 (1986). This argument fails because it is utterly without support in the record. As the Tax Court correctly found, Petitioners have not proven that Taxpayer was under a "reimbursement or other expense allowance arrangement" with Young for Taxpayer's Legal Fee. Contrary to Petitioners' insistence, the fact that the record shows Young's direct and joint payment is "standard operating procedure" in all types of litigation does not support the requisite finding of a reimbursement or other "arrangement" or alter the fact that both Young and Taxpayer were responsible for their respective legal costs. Finally, we also note that the settlement agreement itself makes no mention of attorney's fees and the Taxpayer's lawsuit was dismissed "without prejudice and without costs." Thus, we reject Petitioners' argument that Section 62(a)(2)(A) applies, and reaffirm our conclusion that the Legal Fee falls squarely within Section 62(a)(1).

Having determined that Section 62's employee limitation applies, we turn to its effect on Taxpayer's Legal Fee. Expenses excluded under the Section 62(a)(1) limitation are treated as "itemized deductions" under Section 63, such that they are subtracted from adjusted gross income in computing the taxpayer's "taxable income." *See* I.R.C. § 63(d) (stating that "itemized deductions" include all deductions not "allowable in arriving at adjusted gross income" and the deduction for personal exemptions provided by Section 151). In turn, under Section 67(b) "miscellaneous itemized deductions"—which are defined as all itemized deductions other than those specifically enumerated therein—are subject to a 2–percent floor, such that they are allowable "only to the extent that the aggregate of such deductions exceeds 2 per-

cent of adjusted gross income." Because trade or business expenses subject to Section 62(a)(1), such as Taxpayer's Legal Fee, are not among the deductions listed in Section 67(b), statutory construction leads to the conclusion that they are miscellaneous itemized deductions subject to the 2–percent floor. *See McKay,* 102 T.C. at 493;[18] *cf. In re Black,* 131 B.R. 106, 108 (E.D.Ark.1991) (discussing the deductibility of non-reimbursed employee business expenses).

Upon *de novo* review, and finding no merit to Petitioners' other arguments, we therefore affirm the Tax Court's determination that the Legal Fee is properly deducted "below the line."

### D. Applicability of Alternative Minimum Tax

Petitioners do not dispute that the treatment of Taxpayer's Legal Fee as a miscellaneous itemized deduction triggers the application of the Alternative Minimum Tax (the "AMT") under Sections 55 and 56;[19] nor do they deny that, under Section 56(b)(1)(A)(i), they are not permitted to deduct the Legal Fee as a miscellaneous itemized deduction (as defined in Section 67(b)) in computing the AMT. Petitioners do argue, however, that the Commissioner's "stretching" interpretation of Section 62(a)(1), adopted by the Tax Court and, now, this Court, results in "gross injustice, inequity and lack of uniformity in the treatment of taxpayers similarly situated." (Appellants' Brief, p. 24).

We recognize that, because the amounts involved trigger the AMT and, thus, Taxpayer's deficiency, the outcome smacks of injustice because Taxpayer is effectively robbed of any benefit of the Legal Fee's below the line treatment. While unfortunate for Petitioners here, we disagree that there is inequality of treatment as compared to similarly situat-

---

requiring employees substantiate expenses covered thereunder to the person providing the reimbursement).

**18.** We note that, without advancing much by way of argument, Petitioners urge us not to follow *McKay* (and its statutory analysis), claiming that

it is wrongly decided. We merely add that, upon *de novo* review, we agree with *McKay*'s statutory analysis, and find the case on point.

**19.** 26 U.S.C. §§ 55 and 56 (1988 & Supp.1991).

ed taxpayers. Although it may seem otherwise, in reality Petitioners have not been denied their below the line deduction of the Legal Fee.

■ The AMT was enacted to "ensure that no taxpayer with substantial economic income can avoid significant tax liability by using exclusions, deductions, and credits." S.Rep. No. 313, 99th Cong., 2d Sess. at 518, 1986–3 C.B. (Vol. 3) v., 518; *see also* S.Rep. No. 1263, 95th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1978, 1978–1 C.B. (Vol. 1) 315, 499. It is well established that equitable arguments cannot overcome the plain meaning of the statute. *See Okin v. Commissioner,* 808 F.2d 1338, 1340–42 (9th Cir.) (discussing the purpose and constitutionality of the AMT), *cert. denied,* 484 U.S. 802, 108 S.Ct. 45, 98 L.Ed.2d 10 (1987); *Warfield v. Commissioner,* 84 T.C. 179, 184, 1985 WL 15306 (1985) (rejecting argument that imposition of the AMT was unfair because income-producing transaction was only a "one-time deal;" "[t]here is no justification for creating such an exception to the express terms" of Section 55); *see also Rawlins v. Commissioner,* 1995 WL 610605, at *5–8, 70 T.C.M. (CCH) 1046, 1048 (1995). Petitioners are bound by the tax consequences of the settlement as it actually occurred. *Id.* at 184.

### III. CONCLUSION

For the foregoing reasons, we affirm the Tax Court's decision and uphold the Commissioner's finding of Petitioners' deficiency. The judgment of the Tax Court is ***affirmed.***