T.C. Memo. 1997-202

UNITED STATES TAX COURT

NEIL S. AND RITA E. HARDIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4260-95.                    Filed May 5, 1997.

<u>Allan C. Miles</u>, for petitioners.

<u>Margaret A. Martin</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $56,212
in petitioners' 1992 Federal income tax.

Unless otherwise indicated, all section references are to
the Internal Revenue Code as in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

After concessions,[1] the issues to be decided are: (1) Whether petitioners are entitled to exclude from gross income, pursuant to section 104(a)(2), amounts received in settlement of a class action suit, and (2) whether petitioners are entitled to exclude from gross income amounts paid as legal fees.[2]

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time they filed their petition in the instant case, petitioners resided in Concord, California.

On June 1, 1979, a class action lawsuit, Kraszewski v. State Farm Gen. Ins. Co., was filed against State Farm General Insurance Co., State Farm Mutual Automobile Insurance Co., State Farm Life Insurance Co., and State Farm Fire and Casualty Co.

---

[1] In the notice of deficiency, respondent determined that, for taxable year 1992, petitioners were liable for self-employment tax in the amount of $985 and were entitled to a self-employment tax deduction in the amount of $492. Subsequently, the parties conceded that petitioners were not liable for the self-employment tax and that petitioners were not entitled to the self-employment tax deduction.

[2] In the notice of deficiency, respondent allowed petitioners a deduction in the amount of $41,395 for "Schedule C Legal Fees". In an Amendment to Answer, however, respondent argues that petitioners are not entitled to the deduction of $41,395 as a trade or business expense on Schedule C, but, rather, as a miscellaneous itemized deduction on Schedule A, subject to statutory limitations. Respondent bears the burden as to "any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer". Rule 142(a).

(State Farm) in the U.S. District Court for the Northern District of California.[3]  The class representatives alleged that State Farm had engaged in statewide discrimination in California in the recruiting, hiring, and training of women for sales agent trainee positions in violation of title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. (title VII).  The representatives sought backpay, as well as injunctive and declaratory relief.

The District Court bifurcated the litigation into a liability and a remedy phase.  On April 29, 1985, the court ruled in the liability phase that State Farm was liable under title VII for classwide discrimination on the basis of gender.  See Kraszewski v. State Farm Gen. Ins. Co., 38 Fair Empl. Prac. Cas. (BNA) 197 (N.D. Cal. 1985).  The court found that women who attempted to become trainee agents were "lied to, misinformed, and discouraged in their efforts to attain the entry level sales position."  Id. at 257.  The court then ruled that the class action suit properly included "all female applicants and deterred applicants who, at any time since July 5, 1974, have been, are, or will be denied recruitment, selection and/or hire as trainee agents by defendant companies within the State of California."  Id. at 258.

---

[3]    On Sept. 9, 1981, the District Court for the Northern District of California certified a class in Kraszewski to maintain the action.  See Kraszewski v. State Farm Gen. Ins. Co., 27 Fair Empl. Prac. Cas. (BNA) 27 (N.D. Cal. 1981).

On July 17, 1986, the court held that individual hearings were appropriate to determine the relief for class members. The court decided that class members were entitled to show that they were actual victims of discrimination as to any of the vacancies at State Farm which occurred during the period of liability and were filled by men.

During June 1980, petitioner Rita E. Hardin (petitioner) sought employment as a State Farm trainee agent but was deterred from completing the application process. During 1988, petitioner became aware of the class action suit against State Farm. Subsequently, petitioner executed a Final Claim Form and became a plaintiff in the class action suit against State Farm.[4] In February of 1992, petitioner and State Farm entered into a "Settlement Agreement and General Release" (settlement agreement), which provided in relevant part:

> 1. For and in consideration of the sum of $190,539.00, and potential additional payments of up to $18,000.00 as provided in Paragraph 13 below, * * * less all required payroll deductions applicable to the period of Trainee Agency, if any, and inclusive of attorneys's [sic] fees and costs to which * * * [petitioner] Rita Ellen Hardin or * * * [petitioner's] Counsel is entitled on a prevailing party basis but excluding attorneys' fees and costs as set

---

[4] Before petitioner filed the Final Claim Form, on or around Jan. 13, 1988, a Consent Decree Regarding Monetary Relief, Instatement Relief, and Notice (consent decree) was filed in the class action suit in which the parties to the class action suit, inter alia, reached an agreement as to the remedy phase of the litigation. Section A of exhibit 9 to the consent decree provides, at par. IV.E.2.c., that "Negotiated Settlements are not governed by the calculation rules for any of the types of damages available under this [Consent] Decree."

forth in Paragraph 4 below, Rita Ellen Hardin * * * does hereby completely release and forever discharge * * * [State Farm] * * * from any claim * * * or liability of any and every kind based on any federal, state, or local law, statute, or regulation, excepting only claims for worker's compensation benefits, (hereinafter "Claim") which arose prior to the execution of this Settlement Agreement and General Release, and which was raised, or could have been raised in the above-captioned case, as well as any and all Claims (including, where applicable, claims under the federal Age Discrimination in Employment Act) arising out of or relating to any alleged discriminatory, improper, or unlawful act or omission of State Farm in connection with any term or condition of employment or independent contractor status or the process of securing or attempting to secure employee or independent contractor status including, without limitation, recruitment, selection, hiring, job assignment, job transfer, training, promotion, or termination, which arose prior to the execution of this Settlement Agreement and General Release.

            *    *    *    *    *    *    *

3.    * * * [Petitioner] hereby agrees and promises * * * (3) that by entering into this Settlement Agreement and General Release, she is waiving any and all right[s] she may have under the terms of the Consent Decree respecting instatement or rights to any other future class relief * * *

            *    *    *    *    *    *    *

5.    It is understood and agreed that this is a full and final General Release applying not only to all Claims which are presently known, anticipated or disclosed to * * * [petitioner], but also to all Claims which are presently unknown, unanticipated, and undisclosed to * * * [petitioner] and which may have arisen prior to the date of execution of this Settlement Agreement and General Release. * * * [Petitioner] hereby waives any and all rights or benefits which she may now have, or may in the future have, under the terms of Section 1542 of the California Civil Code, which provides as follows:

        A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

* * * * * * *

7. It is understood and agreed that this compromise settlement includes the compromise settlement of any and all legal, evidentiary, discovery, and document production issues regarding Claim No. 624 * * *. The parties further agree and understand that neither State Farm nor * * * [petitioner] will bring any motions, either individually or as part of the class, relative to such Claim No. 624 issues * * *

13. * * * The approximate full value of * * * [petitioner's] claim under the Consent Decree damage formula as of February 1, 1992, is $510,254.00, which represents back pay as a State Farm agent accrued from the year of the challenged appointment to February 1, 1992, plus six months of front pay from that date forward.

b. Settlement Cash at 87.5% Acceptance Rate: State Farm offers * * * [petitioner] Settlement Cash of $190,539.00, which is approximately 37% of the estimated full Consent Decree value of her claim, to release her claims against State Farm. * * *

* * * * * * *

c. Incentive Cash for Acceptance Rate Above 90%: The Incentive Cash will be $1,800.00 per claimant for each full percentage point by which the Acceptance Rate * * * exceeds 90%. * * *

* * * * * * *

e. Attorney's Fees: The payments State Farm is offering to * * * [petitioner] include her attorneys' fees and costs * * *. That is, * * * [petitioner] will have to pay her attorneys' fees * * * out of the payment State Farm makes to her. * * *

On April 15, 1992, pursuant to the terms of the settlement, State Farm issued petitioner and her attorneys a check in the amount of $206,739, which included an "incentive cash" payment of $16,200 (State Farm payment). Petitioner's attorneys retained legal fees

and costs of $41,395, and the remaining $165,344 was paid to petitioner.

On their 1992 joint Federal income tax return, petitioners did not report the State Farm payment. Respondent determined that the entire State Farm payment should have been included in petitioners' gross income. Additionally, respondent asserted in the answer that petitioners are entitled to claim legal fees in the amount of $41,395 as a miscellaneous itemized deduction.

## OPINION

Petitioners did not file a brief in the instant case. Accordingly, we address the issues argued by petitioners in their trial memorandum.

Except as otherwise provided, gross income includes income from all sources. Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Although section 61(a) is to be broadly construed, statutory exclusions from income must be narrowly construed. Commissioner v. Schleier, 515 U.S. ___, ___, 115 S. Ct. 2159, 2163 (1995).

Pursuant to section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". The regulations provide that

> The term "damages received (whether by suit or
> agreement)" means an amount received * * * through
> prosecution of a legal suit or action based upon tort
> or tort type rights, or through a settlement agreement

entered into in lieu of such prosecution.  [Sec. 1.104-1(c), Income Tax Regs.]

Accordingly, to exclude damages from gross income pursuant to section 104(a)(2), the taxpayer must establish that:  (1) The underlying cause of action is based upon tort or tort type rights, and (2) the damages were received on account of personal injuries or sickness.  Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2167.

Turning to the first requirement of Commissioner v. Schleier, supra, we examine whether petitioner's claim was "based upon tort or tort type rights".  Citing United States v. Burke, 504 U.S. 229, 237 (1992), respondent argues that petitioner's claim, which arose under title VII, was not based upon tort or tort type rights.  Petitioners, however, argue that the State Farm payment was made to settle petitioner's claim of tortious discrimination under California and Federal law.  Additionally, petitioners argue that, pursuant to the settlement agreement, petitioner released all of her rights against State Farm, including tort or tort type rights.

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable from gross income pursuant to section 104(a)(2).  United States v. Burke, supra at 237.  The critical question is "in lieu of what were damages awarded" or paid.  Bagley v. Commissioner, 105 T.C.

396, 406 (1995); Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987).  Determination of the nature of the claim is a factual inquiry.  Robinson v. Commissioner, 102 T.C. 116, 127 (1994), affd. in part, revd. in part and remanded 70 F.3d 34 (5th Cir. 1995).

Petitioners first argue that the State Farm payment was made to settle a claim of tortious discrimination under California and Federal law.  We disagree.  In the instant case, although the settlement agreement does not contain a specific reference to title VII, the surrounding circumstances convince us that, pursuant to the settlement agreement, the State Farm payment was made to settle a claim under title VII.  Petitioner was a claimant in a class action suit that alleged discrimination under title VII and sought backpay and injunctive and declaratory relief.  The District Court ruled that State Farm was liable under title VII to all members of the class who had been discriminated against and ordered individual hearings.

Subsequently, petitioner and State Farm entered into a settlement agreement pursuant to which State Farm paid $206,739 to petitioner for petitioner's release of a claim "arising out of or relating to any alleged discriminatory, improper, or unlawful act or omission of State Farm in connection with * * * recruitment, selection, hiring, job assignment, job transfer, training, promotion, or termination".  Additionally, the settlement agreement expressly stated that it includes "the

compromise settlement of any and all legal, evidentiary, discovery, and document production issues regarding Claim No. 624".[5] Accordingly, we conclude that the settlement agreement represented a compromise and settlement of petitioner's rights pursuant to her claim against State Farm alleging discrimination[6] under title VII.[7]

Petitioners also argue that, in releasing all of her rights against State Farm, petitioner's release included tort or tort type rights. We, however, conclude that petitioners have failed to establish that the State Farm payment was attributable to a claim based upon tort or tort type rights under laws other than title VII.[8] Consequently, petitioners have failed to prove that any part of the State Farm payment is excludable from gross

---

[5] Claim No. 624 was the identification of petitioner's claim against State Farm in the class action suit.

[6] We do not find applicable petitioners' citation of Rojo v. Kliger, 52 Cal. 3d 65, 82, 801 P.2d 376, 383 (1990), in which the California Supreme Court held that a claim under the California Fair Employment and Housing Act "does not displace any causes of action and remedies that are otherwise available to plaintiffs." As discussed, supra, petitioner's claim was under title VII.

[7] As petitioner's claim arose during 1975 and the class action suit was filed during 1979, the amendments to title VII made by sec. 102 of the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1072-1074, do not apply. Landgraf v. USI Film Prods., 511 U.S. 244 (1994).

[8] We note that, insofar as the State Farm payment was attributable to a claim under the Age Discrimination in Employment Act of 1967 (ADEA), "a recovery under the ADEA is not one that is 'based upon tort or tort type rights.'" Commissioner v. Schleier, 515 U.S. ___, ___, 115 S. Ct. 2159, 2167 (1995).

income.  Accordingly, on the basis of the record in the instant case, we conclude that, pursuant to the settlement agreement, the State Farm payment was intended to settle petitioner's claim against State Farm under title VII.

As we have concluded that petitioner's claim was not based upon tort or tort type rights, we need not address the second requirement of Commissioner v. Schleier, supra, regarding the nature of damages.  Accordingly, we conclude that petitioners are not entitled to exclude any part of the State Farm payment pursuant to section 104(a)(2).[9]

The next issue to be decided is whether petitioners are entitled to exclude from gross income amounts paid as legal fees.[10]  Petitioners contend that, as petitioner's legal fees were paid to counsel from the settlement proceeds and petitioner never received such fees, petitioners are entitled to exclude the legal fees from their income.  Citing Alexander v. Commissioner, 72 F.3d 938 (1st Cir. 1995) (citing with approval McKay v. Commissioner, 102 T.C. 465 (1994), revd. on another issue without published opinion 84 F.3d 433 (5th Cir. 1996)), affg. T.C. Memo.

---

[9]     We note that our opinion herein is consistent with prior decisions of this Court, which similarly held that settlement proceeds received pursuant to the Kraszewski litigation were not excludable from gross income under sec. 104(a)(2).  See Raney v. Commissioner, T.C. Memo. 1997-200; Clark v. Commissioner, T.C. Memo. 1997-156; Martinez v. Commissioner, T.C. Memo. 1997-126; Fredrickson v. Commissioner, T.C. Memo. 1997-125.

[10]     Respondent bears the burden as to this issue.

1995-51, respondent contends that petitioners may deduct attorney's fees in the amount of $41,395 only as a miscellaneous itemized deduction.

We agree with respondent.  In <u>Alexander</u>, the Court of Appeals stated that the former employer's "direct and joint payment is 'standard operating procedure' in all types of litigation" and that both the former employer and the taxpayer were responsible for their respective legal costs, <u>id.</u> at 946, and limited the taxpayer's deduction to a miscellaneous itemized deduction.  In the instant case, although State Farm issued a check jointly to petitioner and her attorneys, petitioner was responsible for her legal costs.  The settlement agreement provided, inter alia, that the State Farm payment included petitioner's attorney's fees and that it was petitioner's responsibility to pay her attorney's fees.  Accordingly, we conclude that petitioners are entitled to claim attorney's fees in the amount of $41,395 as a miscellaneous itemized deduction.

We have considered all of petitioners' remaining arguments and find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.