J. KENNETH ALEXANDER AND JOANNE M. ALEXANDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alexander v. Commissioner
Docket No. 11611-93
United States Tax Court
T.C. Memo 1995-51; 1995 Tax Ct. Memo LEXIS 44; 69 T.C.M. (CCH) 1792; January 31, 1995, Filed *44 Decision will be entered for respondent. For petitioners: Philip J. Ryan. For respondent: Michael P. Breton. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 57,441 in petitioners' Federal income tax for the year ended December 31, 1989. The sole issue for decision is the proper treatment for legal fees that J. Kenneth Alexander (petitioner) paid in connection with the settlement of a civil lawsuit that he filed against his former employer. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in East Longmeadow, Massachusetts, at the time the petition was filed. This case arose out of the settlement of a civil lawsuit that petitioner filed against his former employer, W. F. Young, Inc. (Young). On October 15, 1987, Young terminated petitioner's employment. Subsequent to his termination, petitioner offered management consulting services for a fee. He obtained a contract to perform consulting services *45 for the Hanson Group of Ludlow, Massachusetts, and began work in March 1989. On or about February 10, 1988, petitioner filed a civil lawsuit against Young, J. Kenneth Alexander v. W. F. Young, Inc., Civil Action No. 82-243 (the lawsuit). Petitioner hired the law firm of Ryan & White, P.C. (Ryan & White), to commence and prosecute the lawsuit. In his complaint, petitioner alleged that his termination breached his express employment contract with Young (Count I), violated the terms of an implied contract with Young to provide him with certain retirement benefits (Count II), and constituted age discrimination under Mass. Gen. L. ch. 151B, sec. 1 (1976) (Count III). Petitioner and Young settled the lawsuit and entered into a written settlement agreement dated May 1, 1989 (the agreement). The agreement provided that Young pay to petitioner a lump sum of $ 350,000. Of this amount, $ 250,000 was allocated to Counts I and II of the lawsuit and $ 100,000 was allocated to Count III of the lawsuit. In accordance with the agreement, Young issued two checks, on May 5, 1989, made payable to "J. Kenneth Alexander and Ryan & White, Attorneys for J. Kenneth Alexander". Petitioner incurred *46 legal fees totaling $ 258,000 from Ryan & White in connection with the lawsuit. At petitioner's request, Ryan & White opined that 95 percent of the time the firm had spent in preparing petitioner's lawsuit and settlement was associated with Counts I and II and that the remaining 5 percent was associated with Count III. In their Federal income tax return for 1989, petitioners' tax preparer attached a footnote entitled "Disclosure Under Reg. Sec. 1.6661". Based on the time allocations of Ryan & White, petitioners' tax preparer reported that $ 245,100 (95 percent of the $ 258,000 of legal fees paid by petitioner to Ryan & White) was associated with Counts I and II. Petitioners deducted the legal fees associated with Counts I and II of the lawsuit from the settlement proceeds that petitioner had received in connection with Counts I and II. Respondent sent a notice of deficiency disallowing the deduction of petitioner's legal fees from the settlement proceeds that petitioner received from Young. Respondent determined that the $ 250,000 that petitioner received from Young in settlement of Counts I and II was gross income to petitioner and that the legal fees associated with Counts *47 I and II were miscellaneous itemized deductions. Respondent adjusted the $ 245,100 deduction reported by petitioners to $ 240,198, due to the 2-percent adjusted gross income limitation and the increase in petitioners' adjusted gross income. Respondent also determined that, due to the adjustments made to petitioners' income and miscellaneous itemized deductions for 1989, petitioners were liable for the alternative minimum tax. These adjustments resulted in a deficiency of $ 57,441. OPINION The dispute here concerns the appropriate treatment for the legal fees that petitioner incurred in the course of pursuing the lawsuit against Young for its alleged breach of the express and implied contracts, namely, whether the legal fees may be netted against the settlement proceeds or, instead, must be treated as a miscellaneous itemized deduction under sections 62 and 67. If the fees must be treated as a miscellaneous itemized deduction, petitioners' tax will be computed under sections 55 and 56. Ordinarily, the issue of the general deductibility of legal expenses is resolved by considering the context in which the expenses were incurred. See secs. 162, 212, 262, and 263; McKay v. Commissioner, 102 T.C. 465 (1994). *48 A taxpayer is permitted to deduct legal fees under section 162 or section 212, provided that the fees are not personal expenses of the taxpayer. Legal fees may be deducted from gross income, pursuant to section 62(a), as a business expense under section 162 if the fees are directly related to the taxpayer's trade or business. McKeague v. United States, 12 Cl. Ct. 671, 674 (1987). If the taxpayer's trade or business is that of being an employee, however, then the legal expenses will be subject to the limitation of section 62(a)(1) and will be treated as a miscellaneous itemized deduction pursuant to section 67. Petitioner attempts to persuade us that the usual analysis for the deductibility of legal fees is not applicable here because the settlement of his contract claims constituted the disposition of intangible assets and that his legal fees were part of the cost incurred in the disposition of these assets. According to petitioner, he properly deducted the legal fees from the amount he realized from settlement, pursuant to section 1001, to determine the amount of gain from the disposition of his contract claims. In the alternative, petitioner *49 argues that, if the entire settlement proceeds that were allocated to his contract claims constitute gross income, the legal fees should be permitted "above the line" treatment as a trade or business expense. Respondent maintains that the settlement did not constitute the disposition of property and that the entire amount of the settlement proceeds that was allocated to petitioner's contract claims is gross income to petitioner. Additionally, respondent contends that the limitation of section 62(a)(1) is applicable and, therefore, that the legal fees were incurred as a miscellaneous itemized deduction pursuant to section 67. Respondent further maintains that, due in part to this miscellaneous itemized deduction, petitioners are subject to the alternative minimum tax provisions of sections 55 and 56. Settlement as Disposition of Intangible Assets
Section 1001 provides that the "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis". Petitioner contends that his express employment contract and implied contract for retirement benefits with Young were valuable intangible assets. Petitioner argues that, *50 after his termination, these assets had only nominal value because Young would not voluntarily honor the contracts. Petitioner maintains that he filed a lawsuit and incurred legal fees to add value to his contract claims and chose-in-action and to dispose of these "assets" by either a victorious lawsuit or a settlement with Young. Petitioner cites Laird v. United States, 556 F.2d 1224 (5th Cir. 1977); Rev. Rul. 77-137, 1971-1 C.B. 104; and Rev. Rul. 67-379, 1967-2 C.B. 127, as authority for the contention that his contract claims against Young were intangible assets. Unlike the case at hand, however, Laird and both rulings were concerned specifically with professional athletes' contracts. There was no dispute in Laird as to the characterization of the players' contracts as intangible assets. The parties agreed that the contracts had distinct values and limited useful lives and that there was a market for the exchange of such contracts. Laird v. United States, supra at 1233-1234. Petitioner's express and implied contracts *51 have little similarity with a professional athlete's contract. There is no market for either petitioner's employment contract or implied contract for retirement benefits. In addition, petitioner's contracts are not amortizable or depreciable. Petitioner fails to address these distinctions. We agree with respondent that petitioner's analogy to the contracts in Laird, in Rev. Rul. 77-137, supra, and in Rev. Rul. 67-379, supra, is unpersuasive. Petitioner also attempts to support his characterization by arguing that the employment contract gave him "the right to be paid for a definite period of time" and that the implied contract gave him the right to certain retirement benefits. These rights, petitioner contends, are intangible assets. Petitioner further maintains that, although his rights to receive payments and benefits were contingent on his performance of his contractual duties, his duties of performance were excused under Massachusetts law when his employment was terminated. According to petitioner, the settlement was a "cancellation" of his contractual rights because, after *52 the settlement, petitioner no longer possessed any rights to receive payments or retirement benefits from Young. Assuming the settlement was, as petitioner contends, a "cancellation" of his rights under the employment contract and implied contract, this does not necessarily suggest that the settlement thus constituted a "disposition" of property. "An amount received in consideration for cancellation of an employment contract is ordinary income in the year received." Heyn v. Commissioner, 39 T.C. 719, 720 (1963); Jessop v. Commissioner, 16 T.C. 491, 498 (1951). In substance, petitioner was suing for damages he suffered by the loss of his employment with Young. Petitioner's damages were the loss of compensation from Young in terms of salary and retirement benefits. Such compensation would have constituted ordinary income to petitioner. Consequently, petitioner's contention that the relinquishment of his contractual claims was a disposition of intangible assets fails, because petitioner essentially received settlement proceeds in lieu of compensation from Young. Petitioner also cites Herbert's Estate v. Commissioner, 139 F.2d 756 (3d Cir. 1943), *53 affg. a Memorandum Opinion of this Court, to contend that the settlement of a legal claim constitutes the disposition of property. In that case, John W. Herbert (Herbert) had a claim against a corporation, which claim was represented by notes and an open account, at the date of his death. The taxpayers, the executors of Herbert's estate, collected on the claim and received an amount greater than the value of the claim at the date of Herbert's death. The dispute concerned the legal effect to the taxpayers of the payments that they received from the debtor. In holding that the taxpayers had income to the extent the amount they received exceeded the stipulated value of the claim at the date of Herbert's death, the Court of Appeals for the Third Circuit reasoned: The basic issue thus presented is, does one who acquires a claim against a third person make a disposition of it when the third person pays it. The dictionary definition of "disposition" is the meaning one usually attributes to the word. It is "The getting rid, or making over, of anything; relinquishment;". In this elementary and usual sense of the word, the transaction certainly falls within the statute. The estate *54 had a chose in action, property, which it got rid of or relinquished upon payment. * * * [Id.; fn. ref. omitted.]
Petitioner maintains that Herbert's Estate is directly on point. We disagree. Unlike the executors, petitioner did not hold a claim against Young in the sense of a debt. Petitioner was not a creditor of Young. In Herbert's Estate, the decedent was characterized as a "creditor", and his right to collect on the debt, which passed to the taxpayers as executors of his estate, was represented by notes and open accounts. Such debts are generally transferable in a market. In contrast, petitioner is a former employee who sued for the alleged breach of express and implied employment contracts. His claim was not liquidated prior to the settlement, and it was not readily transferable, if at all. Therefore, the characterization by the Court of Appeals for the Third Circuit of the receipt from the extinguishment of the decedent's debt is not applicable to petitioner's situation. In any event, the characterization of a transaction as the sale of an asset for one purpose, such as recognition of gain, does not necessarily carry over into a different statutory *55 context. "[A] specific statutory enactment takes precedence over one more general even if the latter might otherwise appear to govern." Essenfeld v. Commissioner, 37 T.C. 117, 122 (1961), affd. 311 F.2d 208 (2d Cir. 1962); see also United States v. Chase, 135 U.S. 255, 259 (1890). Respondent characterizes the settlement proceeds as damages received for the alleged breach of petitioner's employment contracts by Young. According to respondent, judicial precedent has invariably treated such damages as in the nature of compensation or in lieu of income and thus taxable as ordinary income. Hodge v. Commissioner, 64 T.C. 616 (1975); Henry v. Commissioner, 62 T.C. 605 (1974); Estate of Stearns v. Commissioner, 14 T.C. 420 (1950), affd. per curiam 189 F.2d 259 (6th Cir. 1951). Although Hodge and Estate of Stearns dealt with suits for back wages, Henry involved a situation analogous to that of petitioner and is relevant to our analysis. In Henry, the Court addressed *56 the issue of the characterization of proceeds from the settlement of a lawsuit that the taxpayer had brought against his employer to recover damages for an alleged breach of an employment contract. Henry v. Commissioner, supra at 606. The taxpayer had been terminated and sought damages, which he had calculated by multiplying his 1967 commissions under his employment contract by his life expectancy. The Court concluded that the taxpayer was suing for lost commissions due to the breach of his employment contract, and, therefore, the settlement proceeds were fully taxable as ordinary income. Id. Petitioner's situation more closely resembles that in Henry than that in Herbert's Estate v. Commissioner, supra.
Although petitioner maintains that his contract claims were ordinary, not capital, assets, petitioner urges us to adopt the rationale applied in a line of cases addressing the deductibility of legal fees incurred in the disposition of a capital asset. United States v. Hilton Hotels Corp., 397 U.S. 580 (1970); Woodward v. Commissioner, 397 U.S. 572 (1970); *57 Helgerson v. United States, 426 F.2d 1293 (8th Cir. 1970); Baier v. Commissioner, 63 T.C. 513 (1975), affd. 533 F.2d 117 (3d Cir. 1976). Petitioner contends that these cases "clearly indicate that legal fees incurred in the disposition of an asset are properly subtracted from the amount realized upon disposition in order to determine gain." This does not lead to the conclusion that petitioner's legal fees were incurred in the disposition of intangible assets. The settlement proceeds that petitioner received for the release of his express and implied contract claims against Young were gross income to petitioner. We agree with respondent that damages received for breach of an employment contract are in the nature of compensation and taxable as ordinary income to the recipient. Hodge v. Commissioner, supra; Henry v. Commissioner, supra; Heyn v. Commissioner, 39 T.C. 719 (1963). Petitioner is thus not entitled to deduct the legal fees that he incurred in the settlement of such claims as costs *58 incurred in the disposition of an asset pursuant to section 1001. Treatment of the Legal Fees Deduction
Section 162(a) provides that there "shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Although the parties agree that petitioner's legal fees are section 162(a) expenses, they disagree as to whether the fees are a deduction from adjusted gross income. Section 62 (a)(1) defines the term "adjusted gross income" as gross income minus the deductions "attributable to a trade or business carried on by the taxpayer if such trade or business does not consist of the performance of services by the taxpayer as an employee" and, thus, precludes an "above-the-line" deduction for business expenses incurred as an employee. Emphasis added. Section 67(a) imposes a 2-percent floor on the miscellaneous itemized deductions of individuals for all taxable years beginning after December 31, 1986. Miscellaneous itemized deductions are defined in section 67(b) as those deductions that are not specifically enumerated in section 67(b); section 162 deductions that are subject to section 62(a)(1) *59 are not included in section 67(b) and, thus, are subject to the 2-percent floor. Petitioner maintains that the employee business expense limitation of section 62(a)(1) is not applicable to his situation because, after his termination, petitioner was engaged in the trade or business of an independent management consultant and not an employee of Young. Petitioner points to the contract he obtained after his termination to perform consulting work for the Hanson Group of Ludlow, Massachusetts, as evidence of his new trade or business. In contrast, respondent contends that petitioner's legal fees were incurred in connection with his trade or business as an employee and corporate executive of Young. Therefore, according to respondent, section 62(a)(1) is applicable to petitioner's case, and petitioner's legal fees are deductible as miscellaneous itemized deductions, subject to the 2-percent limitation of section 67(a). In Mckay v. Commissioner, 102 T.C. 465 (1994), the taxpayer brought suit against his former employer alleging, among other things, breach of an employment contract. The parties entered into a settlement agreement in extinguishment of the *60 taxpayer's claims. The taxpayer then deducted the legal fees that he had incurred in connection with the suit under section 162 as an ordinary and necessary business expense. We held that the taxpayer's legal expenses were incurred in the course of his trade or business as a corporate executive of his employer and, thus, were deductible under section 162. Id. at 489. Because the taxpayer was in the business of being an employee, section 62(a)(1) applied, and the litigation expenses were itemized deductions subject to the 2-percent limitation of section 67(a). Id. at 493. Petitioner contends that his situation is distinguishable from McKay because, at the time of settlement, petitioner was holding himself out as an executive management consultant on an independent contractor basis. According to petitioner, he had broken "the chain of employee" status because, unlike the taxpayer in McKay, he did not remain unemployed after termination. The limitation of section 62(a)(1) makes no such distinction between present and former employees if the expenses originated in the trade or business of being an employee. *61 McKeague v. United States, 12 Cl. Ct. 671 (1987), affd. without published opinion 852 F.2d 1294 (Fed. Cir. 1988). In McKay v. Commissioner, supra at 488, we stated: "We first consider the issue of the general deductibility of the legal and litigation-related expenses. We must consider the context in which the expenses are incurred. See sections 162, 212, 262, 263." The taxpayer's litigation in McKay arose from and was related to his prior employment. Similarly, petitioner's lawsuit against Young arose out of his employment at Young, regardless of whether or not he was in the trade or business of an independent management consultant at the time of settlement. Petitioner also contends that section 62(a)(1) is not applicable to his situation because he incurred the litigation expenses for his own benefit and not for that of his prior employer. Petitioner's argument is without merit. In McKeague v. United States, supra, the litigation expenses for bringing suit against the taxpayer's former employer for lost wages were held to have originated from *62 and been related to the taxpayer's trade or business of being an employee. The taxpayer's legal expenses, like those of petitioner, were not incurred for the benefit of the taxpayer's employer. Petitioner also argues that the limitation of section 62(a)(1) is inapplicable because the payment of his legal fees to Ryan & White qualified as a reimbursement or expense allowance arrangement with Young under section 62(a)(2)(A). Section 62(a)(2)(A) provides that, for purposes of determining adjusted gross income, an employee is permitted a deduction for expenses paid by the employee in connection with the performance of services as an employee of an employer, under a reimbursement or expense allowance arrangement. Pursuant to applicable Massachusetts law, Ryan & White possessed a statutory lien for payment. Mass. Gen. L. ch. 221, sec. 50 (1986). Petitioner argues that Young made its settlement check payable to petitioner and to Ryan & White as joint payees to avoid any possible liability to Ryan & White if the firm were bypassed in the payment process. Petitioner further contends that, by making petitioner and Ryan & White joint payees, Young was, in effect, providing for the payment *63 of petitioner's legal fees pursuant to section 62(a)(2)(A). Petitioner has not proven that he was under a reimbursement or other expense allowance arrangement with Young and, thus, section 62(a)(2)(A) is not applicable. Petitioner and Young each incurred their respective legal costs, and each was responsible for the payment of these costs. Young was not responsible for reimbursing petitioner for his legal fees or for arranging to pay the fees directly. Application of the Alternative Minimum Tax (AMT) Provisions
Petitioner is entitled to deduct the legal fees that he incurred in 1989 as a miscellaneous itemized deduction subject to the 2-percent limitation of section 67(a). Inclusion of the additional $ 245,100 in petitioners' gross income subjects them to the AMT provisions of sections 55 and 56. Petitioner urges us to treat the settlement of the contract claims as the disposition of intangible assets to avoid the application of the AMT provisions because their application may result in uneven treatment among taxpayers and encourage skewed allocations of recoveries. These equitable arguments cannot overcome the plain meaning of the statute. See, e.g., Warfield v. Commissioner, 84 T.C. 179, 181-184 (1985); *64 Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984). Accordingly, petitioners are subject to the AMT provisions and, pursuant to section 56(b)(1)(A)(i), are not permitted to deduct their legal fees as a miscellaneous itemized deduction in computing their AMT. Section 56(b)(1)(A)(i) provides in computing their AMT. Section 56(b)(1)(A)(i) provides that miscellaneous itemized deductions (as defined in section 67(b)) are not allowed in calculating the AMT. Decision will be entered for respondent.