T.C. Memo. 1998-395

UNITED STATES TAX COURT

IVOR F. AND DEBRA A. BENCI-WOODWARD, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3769-96, 4185-96,      Filed November 9, 1998.
8265-96.

In these consolidated cases, R determined
deficiencies in Ps' Federal income taxes for their 1992
taxable year due to their failure to include in gross
income certain punitive damages and interest arising
out of a State court lawsuit. (Ps now concede that all
amounts received as punitive damages, plus interest,
are includable in gross income as determined by R. See
O'Gilvie v. United States, 519 U.S. 79 (1996).) R
allowed Ps miscellaneous itemized deductions for legal
fees and costs attributable to their punitive damages
awards pursuant to sec. 67, I.R.C. However, in
computing Ps' alternative minimum tax (AMT)
adjustments, R disallowed their miscellaneous itemized
deductions pursuant to sec. 56(b)(1)(A)(i), I.R.C.

1  Cases of the following petitioners are consolidated
herewith:  Laurentz J. and Barbara Mangum, docket No. 4185-96,
and Jose and Dianne M. Ragatz, docket No. 8265-96.

1.  <u>Held</u>:  Ps' deductions for legal expenses attributable to punitive damages are miscellaneous itemized deductions, deductible to the extent they exceed 2 percent of adjusted gross income.  Sec. 67, I.R.C; sec. 1.67-1T(a)(1)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 9875 (Mar. 28, 1988).

2.  <u>Held</u>, <u>further</u>, miscellaneous itemized deductions for legal expenses related to punitive damage awards are not allowed for purposes of calculating AMT.  Sec. 56(b)(1)(A)(i), I.R.C.; <u>Alexander v. Commissioner</u>, 72 F.3d 938 (1st Cir. 1995), affg. T.C. Memo. 1995-51, applied.

3.  <u>Held</u>, <u>further</u>, Ps' gross income includes their punitive damage awards unreduced by attorney's fees (and costs).  <u>Cotnam v. Commissioner</u>, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957), distinguished.

<u>Philip Garrett Panitz</u>, for petitioners.

<u>Mark A. Weiner</u>, for respondent.

MEMORANDUM OPINION

NIMS, <u>Judge</u>:  In these consolidated cases, respondent determined the following deficiencies with respect to the Federal income taxes of petitioners Ivor F. and Debra A. Benci-Woodward (the Benci-Woodwards), Laurentz J. and Barbara Mangum (the Mangums), and Jose and Dianne M. Ragatz (the Ragatzes):

<u>Docket No. 3769-96</u>
(the Benci-Woodwards)

| Year | Deficiency |
| --- | --- |
| 1992 | $321,002 |

Docket No. 4185-96
(the Mangums)

| Year | Deficiency |
|------|------------|
| 1992 | $314,873 |

Docket No. 8265-96
(the Ragatzes)

| Year | Deficiency |
|------|------------|
| 1992 | $316,965 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

After concessions by petitioners, the issues remaining for decision are: (1) Whether legal expenses attributable to petitioners' receipt of punitive damages constitute miscellaneous itemized deductions within the meaning of section 67(b); if so, (2) whether such deductions are subject to disallowance for purposes of computing petitioners' alternative minimum tax (AMT) liability; and (3) whether attorney's fees and costs may be excluded from gross income under the facts of this case.

These cases were submitted fully stipulated. The petitioners resided in California at the time they filed their petitions.

Background

Ivor F. Benci-Woodward (Benci-Woodward), Laurentz J. Mangum (Mangum), and Jose Ragatz (Ragatz) (collectively referred to herein as the plaintiffs) filed a lawsuit (lawsuit) against Dayton-Hudson, Inc. (Dayton-Hudson), and Dana Pereau (Pereau) (collectively referred to herein as the defendants). Plaintiffs brought the following causes of action, among others, against the defendants: False imprisonment, fraud, defamation, intentional infliction of emotional distress, wrongful discharge, and breach of contract.

In connection with the lawsuit, Benci-Woodward, Mangum, and Ragatz each entered into a Retainer Agreement (Agreement) with John H. Howard, an attorney, which empowered him to "handle any and all legal proceedings arising out of said incidents", and further provided, among other things, that

> Client agrees to pay Attorney for services a sum equal to forty percent (40%) of any amounts received or recovered in this matter on behalf of Client. Attorney may retain his share out of the amount finally collected by settlement or judgment, herein termed "recovery", in full for the services and any advanced costs.

> Attorney is given a first lien and assignment on any recovery however procured to the extent of this contract and such amounts may be retained therefrom. Attorney is given a further lien and assignment on any sums recovered herein for fees incurred for all legal work performed for client whatsoever and such amounts shall be in addition to the contingent fee and costs provided for in this agreement.

A jury trial was held before Judge Melinda A. Johnson of the Superior Court of California, County of Ventura, on April 23, 1990.  Verdict was entered on July 11, 1990.  In addition to awards for compensatory damages, each plaintiff was awarded punitive damages in the amount of $1,190,000, plus interest, from Dayton-Hudson.  Furthermore, Ragatz and Mangum were each awarded punitive damages in the amount of $16,000 from Pereau, plus interest, and Benci-Woodward was awarded $12,000 in punitive damages, plus interest, from Pereau.  Dayton-Hudson paid its portion of both the compensatory and punitive damage awards in full to Howard's trust account.

According to a Breakdown dated October 8, 1992, supplied by Howard to Benci-Woodward, the latter was entitled to receive a net combined amount from Dayton-Hudson and Pereau of $915,097, consisting of judgment amounts, interest, and costs paid by Dayton-Hudson, less attorney's fees and certain costs advanced by Howard and another.  The $915,097 was disbursed by Howard to Benci-Woodward out of the trust account.

According to a Breakdown dated October 8, 1992, supplied by Howard to Ragatz, the latter was entitled to receive a net combined amount from Dayton-Hudson and Pereau of $881,226, consisting of judgment amounts, interest, and costs paid by Dayton-Hudson, less attorney's fees, costs advanced by Howard,

and certain other miscellaneous items. The $881,226.03 was disbursed by Howard to Ragatz out of the trust account.

The details of the disbursement to Mangum are not in the record.

Petitioners did not report their punitive damages awards as taxable income on their respective 1992 tax returns, although the Benci-Woodwards and the Mangums disclosed the awards on their returns. In addition, petitioners did not report in full their interest on punitive damages on their respective 1992 returns.

Respondent timely issued notices of deficiency to petitioners. Among other adjustments, respondent determined that punitive damages and related interest were fully includable in petitioners' gross income pursuant to section 61. Petitioners have since conceded that their punitive damages, and related interest, are includable in gross income in the amounts determined by respondent. See O'Gilvie v. United States, 519 U.S. 79 (1996).

Respondent also determined that the Benci-Woodwards, the Mangums, and the Ragatzes were entitled to miscellaneous itemized deductions, subject to the 2-percent floor provided by section 67(a), for attorney's fees and costs attributable to the punitive damages awards in the amounts of $670,135, $626,448, and $609,767, respectively. However, for AMT purposes, respondent

disallowed petitioners' miscellaneous itemized deductions for legal fees completely, and determined AMT liability for the Benci-Woodwards, the Mangums, and the Ragatzes in the respective amounts of $85,009, $73,787, and $75,694.

Howard reported on Schedule C, Profit or Loss From Business (Sole Proprietorship), attached to his 1992 individual tax return as gross receipts from his legal practice all of the attorney's fees he received from plaintiffs.

## Discussion

The dispute here concerns the appropriate treatment for the legal fees and costs attributable to punitive damages that the plaintiffs incurred in pursuing their lawsuit against the defendants. Section 67(a) imposes a 2-percent floor on the miscellaneous itemized deductions of individuals for all taxable years beginning after December 31, 1986. In other words, miscellaneous itemized deductions may be taken only to the extent that they exceed 2 percent of an individual taxpayer's adjusted gross income. Miscellaneous itemized deductions are defined in section 67(b) as those itemized deductions that are not specifically enumerated therein. Legal expenses related to the production or collection of income and thereby deductible under section 212(1), as here, are not specifically enumerated in section 67(b).

Petitioners argue that Congress never intended legal expenses attributable to punitive damages to fall within the category of miscellaneous itemized deductions. In that connection, petitioners maintain that

> Since punitive damage awards were not definitively determined to be taxable until recently, there was no prior need for a determination that attorney fees should be allowed as an itemized deduction excluded from the miscellaneous itemized deduction "catch-all" of section 67(b).

Petitioners cite no authority in support of their proposition, and their argument is, in fact, untenable. The treatment of legal expenses attributable to punitive damages as miscellaneous itemized deductions results from the purely mechanical application of section 67. Moreover, such treatment accords with the treatment of legal fees attributable to damages awarded in, or settlements connected with, contractual disputes, for example, which have always been subject to tax. Alexander v. Commissioner, 72 F.3d 938 (1st Cir. 1995), affg. T.C. Memo. 1995-51; see also Brewer v. Commissioner, T.C. Memo. 1997-542 (holding that a deduction for legal fees attributable to settlement of Title VII gender discrimination suit is a miscellaneous itemized deduction subject to the 2-percent floor); Glassman v. Commissioner, T.C. Memo. 1997-497 (holding that section 212

deduction for legal fees is a miscellaneous itemized deduction subject to section 67(a)).

Had Congress intended to except legal fees attributable to taxable punitive damages from the 2-percent limitation of section 67(a), it easily could have done so.  It did not, and we must interpret the statute as it is written.  See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); see also Estate of Young v. Commissioner, 81 T.C. 879, 890 (1983) (Chabot, J., concurring), where it is observed that "our task is to interpret the statute that the Congress enacted and not to guess at what the Congress would have done had it faced the matter we deal with in the instant case".

We hold that legal expenses incurred in connection with the receipt of punitive damages constitute miscellaneous itemized deductions within the meaning of section 67(b).  Having so held, we must also decide whether miscellaneous itemized deductions for legal expenses related to receipt of punitive damages are subject to disallowance pursuant to section 56(b)(1)(A)(i) for purposes of computing petitioners' AMT.

Since 1969, the Internal Revenue Code has included minimum tax provisions for both corporate and individual taxpayers.  Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487.  Congress enacted the minimum tax to prevent corporate and individual

taxpayers from aggregating deductions to the point where they pay either no tax or a "shockingly low" tax. <u>First Chicago Corp. v. Commissioner</u>, 842 F.2d 180, 181 (7th Cir. 1988), affg. 88 T.C. 663 (1987).

The post-1986 AMT rules, codified as sections 55 through 59, were enacted to achieve one overriding objective: To establish a floor for tax liability, so that a taxpayer pays some tax regardless of the tax benefits available to him under the regular income tax (RIT). See S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 515, 518. The AMT is paid only if, and to the extent that, it exceeds the taxpayer's RIT. Sec. 55(a). Computing AMT liability begins with determining alternative minimum taxable income (AMTI). AMTI is computed in the same manner as regular taxable income except that the adjustments provided in sections 56 and 58 are taken into account for AMTI, and so-called tax preference items set forth in section 57 are not permitted to reduce AMTI. Sec. 55(b)(2).

Section 56(b) provides as follows:

> (b) Adjustments Applicable to Individuals.--In determining the amount of the alternative minimum taxable income of any taxpayer (other than a corporation), the following treatment shall apply (<u>in lieu of</u> the treatment applicable for purposes of computing the regular tax):
>
> > (1) Limitations on deductions.--
> >
> > > (A) In general.--No deduction shall be allowed--

> (i) for <u>any</u> miscellaneous itemized
> deduction (as defined in section 67(b))
> * * * [Emphasis added.]

Thus, since we have already concluded that the legal expenses at issue are miscellaneous itemized deductions within the meaning of section 67(b), it follows that they are not allowed for purposes of computing petitioners' AMT liability. <u>Alexander v. Commissioner</u>, <u>supra</u>; sec. 56(b)(1)(A)(i); sec. 1.67-1T(a)(1)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 9875 (Mar. 28, 1988).

Petitioners acknowledge that section 56(b)(1)(A)(i) expressly disallows miscellaneous itemized deductions for purposes of computing AMT.  However, petitioners alternatively assert that the application of the AMT in the instant cases unfairly creates "a circumstance of double taxation", inasmuch as petitioners and attorney Howard must pay tax on the same amount recovered from the defendants.  Petitioners' argument on this score is unavailing.  See, e.g., <u>Alexander v. Commissioner</u>, <u>supra</u> at 947 ("It is well established that equitable arguments cannot overcome the plain meaning of the statute.").

We hold that petitioners' legal expenses are miscellaneous itemized deductions subject to disallowance pursuant to section 56(b)(1)(A)(i) for purposes of computing petitioners' AMT liability for their 1992 taxable years.

Petitioners argue in the alternative that they are in the "identical position as the taxpayers in Cotnam and Davis." See Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957); Davis v. Commissioner, T.C. Memo. 1998-248. While as to the salient facts this may be true, petitioners' legal position is not the same.

In Cotnam v. Commissioner, supra at 125, the Court of Appeals for the Fifth Circuit concluded that under 46 Ala. Code sec. 64 (1940), attorneys have the same right over "suits, judgments, and decrees for money" as their clients, so the taxpayer in that case did not realize income as to her attorneys' interests of 40 percent in her cause of action and judgment. Davis v. Commissioner, supra, involving the case of a taxpayer who was a resident of Alabama, followed Cotnam. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

The law of Alabama, as analyzed in Cotnam, is not the law of California, the State of petitioners' residence during all times relevant here. The parties have not brought to our attention any statute of California regulating attorney's liens, and we are aware of none. Nevertheless, the case law of California is clear that liens for attorney's fees, whether created expressly or implied from a retainer agreement, do not transfer to the attorney an ownership or proprietary interest in the client's

cause of action. In an en banc opinion, <u>Isrin v. Superior Court of Los Angeles County</u>, 403 P.2d 728, 732 (Cal. 1965), the Supreme Court of California concluded that contingent fee agreements "do not operate to transfer a part of the cause of action to the attorney but only give him a lien upon his client's recovery."

Petitioners also argue that cases which have addressed the taxability of punitive damages have consistently analyzed those damages net of attorney's fees and costs. Petitioners cite <u>Hawkins v. United States</u>, 30 F.3d 1077 (9th Cir. 1994); <u>O'Gilvie v. United States</u>, 66 F.3d 1550 (10th Cir. 1995), affd. in part, revd. on the issue of taxability of punitive damages 519 U.S. 79 (1996); and <u>Commissioner v. Miller</u>, 914 F.2d 586 (4th Cir. 1990), revg. and remanding 93 T.C. 330 (1989), supplemented by T.C. Memo. 1993-49.

In both <u>Hawkins v. United States</u>, <u>supra</u>, and <u>O'Gilvie v. United States</u>, <u>supra</u>, the respective Courts appear to have accepted, without further consideration or discussion, the premise that the question to be resolved was the taxability of punitive damages, <u>net</u> of attorney's fees and costs. In <u>Commissioner v. Miller</u>, <u>supra</u>, the Court of Appeals for the Fourth Circuit reversed a prior Tax Court decision holding that punitive damages are exempt from tax. The taxpayer had obtained a jury verdict awarding $500,000 in compensatory damages and $450,000 in punitive damages, which was settled for an overall

amount of $900,000, the taxpayer receiving a net of $525,000 after attorney's fees and costs. On remand, the Court of Appeals provided the Tax Court with instructions on possible methods of valuing the punitive damage portion of the settlement, stating that "It is appropriate for the case to be remanded to the Tax Court to permit a determination as to what portion of the $900,000 gross amount in settlement (reduced to $525,000 net) was attributable to punitive damages." Id. at 592. (Emphasis added). The Court of Appeals does not explain its reason for reducing the $900,000 gross amount to the $525,000 net amount, before the directed allocation between punitive and compensatory damages.

With the exception of Cotnam v. Commissioner, supra, and Davis v. Commissioner, supra (which, as noted, followed Cotnam under the Golsen rule), courts, when directly confronted with the question, have uniformly rejected the contention that taxpayers may exclude the amount of their legal fees and costs from gross income in cases such as the one before us. Since the courts in the 3 cases cited by petitioners were not so confronted, and therefore did not have the occasion to focus directly on the issue, we decline to accept those cases as precedent for the proposition that petitioners' gross income is to be determined net of their attorney's fees (and costs). For examples of recent

cases which have distinguished <u>Cotnam</u>, see <u>Sinyard v. Commissioner</u>, T.C. Memo. 1998-364; <u>Srivastava v. Commissioner</u>, T.C. Memo. 1998-362; and <u>Coady v. Commissioner</u>, T.C. Memo. 1998-291, and additional cases cited therein.  We hold that petitioners' gross income includes their punitive damage awards unreduced by their attorney's fees (and costs).

To reflect the foregoing and petitioners' concessions,

<u>Decisions will be entered</u>

<u>for respondent</u>.