T.C. Memo. 2001-127



UNITED STATES TAX COURT



ANDREW S. AND LINDA HAYWORTH BRENNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 13700-99.                       Filed June 4, 2001.



        R determined that, for 1997, Ps were liable
for the alternative minimum tax computed, in part,
by adding back to Ps' reported taxable income legal
fees incurred by P husband (H) and treated by Ps on
their original return as Schedule A miscellaneous
itemized deductions.  See  sec. 56(b)(1)(A)(i), I.R.C.
Ps argue that the legal fees (1) were reimbursed to H
by N as part of N's payment in settlement of an
arbitration proceeding instituted by H and arising out
of N's firing of H in 1996 and (2) are reimbursed
employee business expenses deductible from gross
income.  See sec. 62(a)(2)(A), I.R.C.
        <u>Held</u>:  Because H failed to substantiate his legal
fees to N as required by sec. 1.62-2(c) and (e), Income
Tax Regs., N's reimbursement of such fees is treated as
made under a nonaccountable plan.  Therefore, they are
deductible only as miscellaneous itemized deductions.
See sec. 1.62-2(c)(3), (5), Income Tax Regs.  R's
deficiency determination is sustained.

Howard W. Munchnick, for petitioners.

John J. Sweeney, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notice of deficiency dated May 21, 1999, respondent determined a deficiency in petitioners' Federal income tax for 1997 in the amount of $68,716.  The adjustment giving rise to that deficiency is respondent's determination that petitioners are liable for the alternative minimum tax.  After concessions, the only issue remaining for decision is whether petitioners may treat certain legal fees and related expenses (the legal fees) as reimbursed employee business expenses deductible from gross income pursuant to section 62(a)(2)(A) rather than as miscellaneous itemized deductions, which are not allowed as deductions in computing alternative minimum taxable income subject to the alternative minimum tax.  We hold that they may not.  Our reasons follow.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time of the petition, petitioners resided in Amawalk, New York.

### Employment and Discharge of Petitioner Andrew S. Brenner by Nomura Securities International, Inc.

Petitioner Andrew S. Brenner (petitioner) was an employee of Nomura Securities International, Inc. (Nomura), from August 1987 until his termination from service by Nomura in May 1996.  At Nomura, petitioner traded Government and Government agency securities and, by 1996, he had been promoted to managing director and head governmental trader.

On April 15, 1996, Nomura advised petitioner that a review of his positions in various securities revealed discrepancies in his marking of the value of assets under his control.  Nomura advised petitioner to retain counsel, which he did.  On May 22, 1996, Nomura terminated petitioner's employment for alleged mismarking or misvaluing of securities.  As a result of that termination and Nomura's allegation that he had mismarked securities, Nomura was required by Federal Law to file, and did file, a Uniform Termination Notice (Form U-5) with both the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD).

The Arbitration Proceeding

On May 23, 1996, petitioner commenced an arbitration proceeding with the NASD (the arbitration proceeding) naming Nomura as a party. He commenced the arbitration proceeding by filing a Demand For Arbitration and Statement of Claim (the original claim) alleging, inter alia, breach of his employment contract with Nomura, breach of covenant of good faith and fair dealing, and defamation. He sought damages in the sum of $11,174,000 plus interest on his claims, punitive damages, attorney's fees, and costs.

On July 19, 1996, Nomura filed a counterclaim alleged that petitioner, while at Nomura, had been "parking" securities, and sought "in excess of $500,000" for breach of a fiduciary duty.

On May 13, 1997, petitioner filed a Second Amended Statement of Claim (the amended claim) in which he asserted additional claims, the most significant of which was a $3 million claim for defamation in connection with the filing, by Nomura, of an amended Form U-5, which disclosed that petitioner was involved in an investigation by the NASD.

Other Proceedings

Sometime after filing the original claim, petitioner commenced an action in the New York State Supreme Court. In that action, he moved to enjoin Nomura from filing the original Form U-5 with the NYSE and NASD (the injunction action). The court

permitted Nomura to file the Form U-5 but granted an injunction requiring that it be filed under seal. That injunction was vacated on appeal. In the same court, petitioner commenced a second action against certain Nomura employees. With petitioner's concurrence, that action was ultimately dismissed with prejudice.

Petitioner was also involved in separate investigations of Nomura's and petitioner's trading activities while at Nomura, instituted in 1996 by both the NYSE and the NASD (the NYSE and NASD investigations).

The Partial Summary Judgment Motions

In April 1997, petitioner moved for partial summary judgment in the arbitration proceeding on the issue of whether Nomura should be required to advance to him the legal fees to be incurred by him in connection with the arbitration proceeding, the injunction action, and the NYSE and NASD investigations. Nomura opposed petitioner's motion and, itself, moved for partial summary judgment dismissing petitioner's claim for advancement or reimbursement of the legal fees. Petitioner filed a reply in further support of his own motion and in opposition to Nomura's motion.

Petitioner's position that Nomura was required to advance to him the legal fees was based upon Article XIII of Nomura's by-

laws (Article XIII), as in effect at that time.  In relevant part, Article XIII provides as follows:

ARTICLE XIII

INDEMNIFICATION

SECTION 1.  Except to the extent expressly prohibited by the New York Business Corporation Law, the corporation shall indemnify each person made or threatened to be made a party to any action or proceeding, whether civil or criminal, by reason of the fact that such person * * * is or was a director or officer of the corporation, against judgments, fines * * * penalties, amounts paid in settlement and reasonable expenses, including attorneys' fees, actually and necessarily incurred in connection with such action or proceeding, or any appeal therefrom * * *

Section 2.  The corporation shall advance or promptly reimburse upon request any person entitled to indemnification hereunder for all expenses, including attorneys' fees, reasonably incurred in defending any action or proceeding in advance of the final disposition thereof upon receipt of an undertaking by or on behalf of such person * * * to repay such amount if such person is ultimately found not to be entitled to indemnification or, where indemnification is granted, to the extent the expenses so advanced or reimbursed exceed the amount to which such person is entitled * * *

Nomura's memorandum in opposition to petitioner's motion and in support of its own motion for partial summary judgment argues that, in Article XIII, Nomura "never intended to bear the legal fees of an employee incurred in his action against Nomura".

Before the arbitrator could decide the partial summary judgment motions, the parties ended the arbitration proceeding by agreeing to settle their dispute (the settlement).

Settlement Negotiations

The settlement was achieved at two meetings (the settlement meetings) involving petitioner and William Maitland, Nomura's chief legal officer. The settlement meetings occurred around the close of 1997. At one of the settlement meetings, petitioner offered to settle, telling Mr. Maitland that he would not take anything less than $2 million. He justified that sum to Mr. Maitland based on a bonus he thought due him, interest, legal fees, and a charitable contribution he wished Nomura to make. To settle the arbitration proceeding, Mr. Maitland agreed that Nomura would pay petitioner $1.9 million and, on his behalf, contribute $100,000 to charity (together, the settlement payment). Petitioner agreed to end the arbitration proceeding. Petitioner and Mr. Maitland did not discuss how the settlement payment would be allocated among the claims made by petitioner. Mr. Maitland did not intend any part of the settlement payment to be for any particular claim that petitioner had made. Petitioner did not provide to Mr. Maitland any bills or invoices for legal fees at either meeting.

The Settlement Agreement

On January 14, 1998, Nomura and petitioner executed a Settlement Agreement and General Release (the settlement agreement) by which the parties agreed to execute a stipulation with respect to the arbitration proceeding that "all of the

claims and the counterclaim that have been asserted in * * * [the] arbitration are hereby dismissed with prejudice and without costs to either party"; Nomura agreed to pay petitioner $1,900,000, "less appropriate withholding for income, social security and other taxes * * * in full satisfaction for the resolution of the Settled Claims." Nomura also agreed to donate, in the name of petitioner's son, $50,000 to the Children's Cancer Research Fund and $50,000 to the Children's Cancer Research Program. In consideration of the settlement payment, petitioner released Nomura from liability for all existing claims (including the legal fees) and from a litany of other claims, both known and unknown, that petitioner might assert against Nomura in the future, including but not limited to indemnification of legal fees not yet incurred (the so-called "Settled Claims"). The settlement agreement does not allocate any portion of the settlement payment to petitioner's legal fees or, in fact, to any of the claims asserted by petitioner in the arbitration proceeding.

<u>Nomura's Tax Reporting</u>

Nomura issued to petitioner a 1998 Form W-2, Wage and Tax Statement, which reported as wages subject to tax withholding the $1.9 million cash payment made to petitioner pursuant to the settlement agreement.

Petitioners' Tax Reporting

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for 1997 (the original return). On the original return, petitioners treated the legal fees (in the amount of $215,354[1]) as a miscellaneous itemized deduction. On May 20, 1999, petitioners submitted a Form 1040X, Amended U.S. Individual Income Tax Return (the amended return), on which petitioners treated the legal fees as a deduction in arriving at adjusted gross income.

Respondent's Adjustment

As a result of his examination of the original return, because petitioners had deducted the legal fees as a miscellaneous itemized deduction, respondent added back the legal fees to petitioners' reported taxable income in respondent's computation of petitioners' alternative minimum taxable income subject to alternative minimum tax.

---

[1] Of the $215,354 petitioners claimed as a miscellaneous itemized deduction on the original return, $178,993.37 was paid, in part, in connection with the arbitration proceeding and, in part, in connection with the injunction motion, and $36,314.90 was paid in connection with the NYSE and NASD investigations.

OPINION

I.  Introduction

    A.  Issue

    We must determine whether petitioners have any alternative minimum tax liability on account of their payment, and deduction, of the legal fees.

    B.  Petitioners' Argument

    Petitioners argue as follows:  They erroneously reported the legal fees as a miscellaneous itemized deduction from adjusted gross income on the original return.  Of the settlement payment, $600,000 was intended by Nomura as reimbursement of petitioner's legal expenses.  That amount was paid to him pursuant to Nomura's bylaws, Article XIII.  Article XIII constitutes "a reimbursement or other expense allowance arrangement", as that term is used in section 62(a)(2)(A) (without distinction, a reimbursement arrangement).  The legal fees (the $215,354 expended in 1997) were, therefore, deductible from gross income in the determination of adjusted gross income pursuant to that section.  As a so-called "above the line" deduction, such legal fees were not subject to "add back" in the determination of alternative minimum taxable income.  See sec. 56(b).

C.  Respondent

Respondent argues as follows:  The settlement payment was intended by Nomura as a lump-sum payment in settlement of all claims by petitioner against Nomura.  No portion may be found to discharge any particular claim in the arbitration proceeding such as the claim for attorney's fees.  Even if it were assumed that part of the settlement payment was intended as reimbursement of the legal fees, such fees were not reimbursed pursuant to an employee expense reimbursement plan covered by section 62(a)(2)(A).  Petitioners were correct on the original return, and payment of the legal fees is a miscellaneous itemized deduction, which, on the facts of petitioners' return, causes an alternative minimum tax liability.

II.  Discussion

A.  Necessary Findings

In order for petitioners to prevail, we must find that Nomura both intended at least $215,354 of the settlement payment as reimbursement of the legal fees[2] and made such reimbursement pursuant to a reimbursement arrangement.  To make the second finding, we must find both that Article XIII is a reimbursement

_____

    [2]  See, e.g., Stocks v. Commissioner, 98 T.C. 1, 10 (1992): "If the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor * * * [in making that determination] is 'the intent of the payor' as to the purpose in making the payment."

arrangement <u>and</u> that Nomura reimbursed the legal fees pursuant to, and in accordance with Article XIII.

We shall deal first with the question of whether Nomura reimbursed the legal fees pursuant to, and in accordance with, Article XIII. Since, as we shall explain, we cannot make that finding, we need not consider in any detail the remaining required findings, since petitioners cannot prevail. For the sake of argument, however, we shall assume that Nomura intended $600,000 of the settlement payment as reimbursement of the legal fees and Article XIII, on its face, qualifies as a reimbursement arrangement for the reimbursement of such fees.

B.  <u>Section 62(a)(2)(A) and (c)</u>

In pertinent part, section 62(a) provides:

[T]he term "adjusted gross income" means * * * gross income minus the following deductions:

*    *    *    *    *    *    *

(2) Certain trade and business deductions of employees.--

(A) Reimbursed expenses of employees.--The deductions allowed by part VI (section 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.  * * *

In pertinent part, section 62(c) provides:

(c)  Certain arrangements not Treated as Reimbursement Arrangements.--For purposes of subsection (a)(2)(A), an arrangement shall in no event be treated

as a reimbursement or other expense allowance arrangement if--

> (1) such arrangement does not require the employee to substantiate the expenses covered by the arrangement to the person providing the reimbursement, or

> (2) such arrangement provides the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement.

C.  Section 1.62-2, Income Tax Regs.

1.  Overview

In pertinent part, section 1.62-2(c)(1), Income Tax Regs., provides: "[T]he phrase * * * [reimbursement arrangement] means an arrangement that meets the requirements of paragraphs (d) (business connection), (e) (substantiation), and (f) (returning amounts in excess of expenses) of this section."  In pertinent part, section 1.62-2(c)(2)(i), Income Tax Regs., provides that, if an arrangement meets those requirements, "all amounts paid under * * * [it] are treated as paid under an 'accountable plan'" (accountable plan).  In pertinent part, subdivision (ii) of that section provides that "only the amounts paid under the arrangement that are not in excess of the substantiated expenses are treated as paid under an accountable plan."  Payments under an arrangement that does not satisfy one or more of the requirements of paragraphs (d), (e), or (f) are treated as paid under a "nonaccountable plan" (nonaccountable plan), and, even if the arrangement satisfies those requirements, payments "in excess

of the substantiated expense are treated as paid under a nonaccountable plan." Sec. 1.62-2(c)(3)(ii), Income Tax Regs.

Payments under an accountable plan are excluded from the employee's gross income, are not reported as wages or other compensation on the employee's Form W-2, and are exempt from withholding and payment of employment taxes. Sec. 1.62-2(c)(4), Income Tax Regs. Payments under a nonaccountable plan are included in employee gross income, are reported on the employee's Form W-2 as wages or other compensation, and are subject to withholding and payment of employment taxes. Sec. 1.62-2(c)(5), Income Tax Regs. Expenses attributable to nonaccountable plan payments are deductible by the employee, but only as miscellaneous itemized deductions. Id.

Section 1.62-2(i), Income Tax Regs., provides that the requirements of paragraphs (d), (e), and (f) (business connection, substantiation, and returning excess amounts, respectively) are to be applied "on an employee-by-employee basis." Thus, violation of one of those requirements by one employee "will not cause amounts to be paid to other employees to be treated as paid under a nonaccountable plan." In other words, even if Nomura's assumed reimbursement of the legal fees violates one of the foregoing requirements of the regulations and is, therefore, treated as made under a nonaccountable plan, Article

XIII may still qualify as an accountable plan with respect to Nomura employees other than petitioner.

    2.  Application to Petitioner's Legal Fees

    a.  Business Connection

A reimbursement arrangement satisfies the business connection requirement if it is limited to reimbursement for deductible business expenses "that are paid or incurred by the employee in connection with the performance of services as an employee of the employer."  See sec. 1.62-2(d)(1), Income Tax Regs.  In this case, the reimbursed legal fees relate to actions and proceedings that arose out of petitioner's prior employment with Nomura and, specifically, to Nomura's termination of that employment.  As such, they satisfy the business connection requirement.  See Alexander v. Commissioner, 72 F.3d 938, 945 (1st Cir. 1995), affg. T.C. Memo. 1995-51; McKay v. Commissioner, 102 T.C. 465, 489 (1994), vacated and remanded on another issue without published opinion 84 F.3d 433 (5th Cir. 1996).[3]

    b.  Substantiation

    (1)  Introduction

Under section 1.62-2(e)(1), Income Tax Regs., an arrangement that reimburses business expenses meets the substantiation

---

[3]  For purposes of discussion, we accept as satisfied a second requirement of sec. 1.62-2(d)(1), Income Tax Regs., that the business expense reimbursement be "identified" where, as in this case, "both wages and the reimbursement * * * are combined in a single payment".

requirement "if it requires each business expense to be substantiated to the payor in accordance with paragraph (e)(2) [relating to expenses governed by section 274(d)] or (e)(3) [relating to expenses not governed by section 274(d)]". In pertinent part, section 1.62-2(e)(3), Income Tax Regs. (applicable to this case), provides:

> An arrangement that reimburses business expenses * * * meets the requirements of this paragraph (e)(3) if information is submitted to the payor sufficient to enable the payor to identify the specific nature of each expense and to conclude that the expense is attributable to the payor's business activities. Therefore, each of the elements of an expenditure * * * must be substantiated to the payor. It is not sufficient if an employee merely aggregates expenses into broad categories (such as "travel") or reports individual expenses through the use of vague, nondescriptive terms (such as "miscellaneous business expenses"). See § 1.162-17(b).

While section 1.62-2(e)(1), Income Tax Regs., appears to set forth a precondition, i.e., that an arrangement specifically require substantiation, section 1.62-2(e)(3), Income Tax Regs., seems to require action, i.e., that certain information actually be submitted to the payor in accordance with the aforementioned requirement. We assume that, to satisfy the substantiation requirement, the arrangement must require that the information called for by subparagraph (3) be submitted and that, for an amount to be paid pursuant to a reimbursement arrangement, such information must actually be submitted in accordance with such requirement. See sec. 1.162-17(b), Income Tax Regs. (employee

need not report on his tax return certain expenses "for which he is required to account and does account to his employer"). The latter condition (reporting) is not met here.

(2) Discussion

Article XIII requires the return of any reimbursements or advances to the extent such payments exceed the amount to which the person paid is entitled. We assume that some accounting is required to implement that provision (which we assume would satisfy the specification requirement of section 1.62-2(e)(3), Income Tax Regs.). Nevertheless, we believe that the facts establish that no accounting was made here, so that the actual substantiation requirement of section 1.62-2(e)(3), Income Tax Regs., is not met. At best, the facts establish only that petitioner told Mr. Maitland that he would settle for $2 million based, in part, on his legal fees. That is not substantiation at all.

During his testimony, petitioner stated several times that, in negotiating with Nomura, he justified his claim for $2 million on the basis, in part, of his legal fees, which he estimated to be in excess of $600,000. He testified that, at the second settlement meeting, he told Mr. Maitland: "I expended a little over $600,000 at that point [in legal fees], and that's how I was getting my number." He also testified that neither he nor his attorneys ever documented, to Nomura, legal fees in that amount.

Although he testified that, at the first settlement meeting, his attorneys possessed "a document * * * that had all the expenses, the fees and what have you", he admitted that the document was not submitted to Nomura.  Nor did petitioner provide to Mr. Maitland any confirmation of the legal fees during the second settlement meeting.  He did not dispute a statement by counsel for respondent that "I think we've established you didn't present to him [Mr. Maitland] any bills or invoices at any time".

Petitioner did testify:  "[W]e gave them a list of our expenses at * * * [a] point in time * * * midway through * * * [the arbitration proceeding] give or take."  However, Nomura's memorandum in opposition to petitioner's motion for partial summary judgment states that petitioner "has not given Nomura a single time sheet or lawyer's bill by which Nomura could evaluate the nature and amount of the fees"; petitioner's response to that statement in his reply memorandum is, in effect, an admission of such nondisclosure, which he justifies on the basis of "privilege and confidentiality concerns".  Those memoranda, submitted during the arbitration proceeding, cast doubt on the accuracy of petitioner's trial testimony.  At the very least, they indicate that the "list" referred to contained no more than "broad categories" of expenses, not an itemization of specific bills or invoices, which would qualify as substantiation under section 1.62-2(e)(3), Income Tax Regs.  Moreover, the "list", which was

prepared sometime in 1997, could not have contained more than a fraction of the $600,000 estimated total legal fees as the final amount was not known until all of the various legal proceedings had been completed in late 1998.

Mr. Maitland testified, and we have found, that (1) he and petitioner did not discuss how the settlement payment would be allocated among the claims made by petitioner, and (2) he did not intend any part of the settlement payment to be for any particular claim that petitioner had made.

Pursuant to the settlement agreement, Nomura made the settlement payment and petitioner released Nomura from liability for all existing claims, including any claim for present or future legal expenses.  To enter into the settlement agreement, Mr. Maitland and, by him, Nomura did not require of petitioner any accounting from him of his legal expenses.  Nomura did not attempt to enforce any substantiation requirement that may have been implicit in Article XIII.  More importantly, petitioner did not substantiate his legal expenses to Nomura in any sense other than, perhaps, telling Mr. Maitland that his claim was based in part on legal expenses of $600,000.  Even if that did occur, it is not an accounting sufficient to satisfy section 1.62-2(e)(3), Income Tax Regs.

(3) Conclusion

With respect to the legal fees, petitioner did not meet the substantiation requirement of section 1.62-(2)(e)(3), Income Tax Regs.

c. Returning Amounts in Excess of Expenses

Because we find that petitioner failed to satisfy the substantiation requirements of the regulations, it is unnecessary to decide whether the conditions of section 1.162-2(f), Income Tax Regs., were met. We note, however, that there is obviously a technical violation of that paragraph arising from our finding that petitioner failed to provide adequate substantiation of the legal fees. Under such circumstances, he necessarily failed "to return to the payor [Nomura] * * * [amounts] paid under the arrangement in excess of the expenses substantiated" as required by section 1.62-2(f)(1), Income Tax Regs.

d. Nonaccountable Plan

Amounts paid by Nomura to petitioner in excess of substantiated expenses, which we find to be the entire $600,000 assumed reimbursement of the legal fees, are treated as paid under a nonaccountable plan. Sec. 1.62-2(c)(2)(ii) and (3)(ii), Income Tax Regs. Therefore, the entire $600,000 was properly treated by Nomura as wages or other compensation on petitioner's 1998 Form W-2, and by petitioners (to the extent of the $215,354

attributable to 1997) as a miscellaneous itemized deduction on their 1997 return as filed.  Sec. 1.62-2(c)(5), Income Tax Regs.

III.  <u>Conclusion</u>

We hold that petitioners' deduction of $215,354 for legal fees for 1997 was properly reported as a miscellaneous itemized deduction on Schedule A of the original return, as filed, and that respondent properly added that amount to reported taxable income in his computation of petitioners' 1997 alternative minimum tax.  We, therefore, sustain respondent's deficiency determination.

<u>Decision will be entered</u>

<u>under Rule 155</u>.